PATTI TURGEON, Indiv. and as Special Adm'r of the Estate of William G. Harrington, Deceased, Plaintiff-Appellant, v. COMMONWEALTH EDISON COMPANY *et al.*, Defendants-Appellees.

Second District   No. 2—93—0388

Opinion filed March 21, 1994.—Rehearing denied April 18, 1994.

Monico, Pavich & Spevack, of Chicago (Steven J. Seidman and Barry A. Spevack, of counsel), for appellant.

William A. Geiser, John W. Bell, and Thomas H. Fegan, all of Johnson & Bell, Ltd., of Chicago (Mindy Kallus, of counsel), for appellee Commonwealth Edison Company.

Sullivan, Smith, Hauser & Noonan, Ltd., of Waukegan (Michael K. Noonan, of counsel), for appellee City of Waukegan.

JUSTICE PECCARELLI delivered the opinion of the court:

Plaintiff, Patti Turgeon, special administrator of the estate of her deceased son, William G. Harrington (Bill), who was 17 years old when he died, sued defendants, Commonwealth Edison Company (Edison) and the City of Waukegan (Waukegan), alleging they were liable

for Bill's death. Plaintiff appeals from a judgment in favor of defendants entered by the circuit court of Lake County following a jury trial.

On appeal, plaintiff contends that the trial court erred when it: (1) did not allow plaintiff to introduce evidence of prior accidental drowning deaths; (2) did not allow plaintiff to introduce evidence that Edison posted warning signs subsequent to Bill's drowning, or evidence of a subsequent accidental drowning death; (3) applied the Recreational Use of Land and Water Areas Act (Recreational Use Act) (Ill. Rev. Stat. 1991, ch. 70, pars. 31 through 37 (now 745 ILCS 65/1 through 7 (West 1992))) with its willful and wanton standard of liability; and (4) granted summary judgment dismissing two counts of plaintiff's fourth amended complaint alleging Edison was liable under the Public Utilities Act (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 1—101 *et seq.* (now 220 ILCS 5/1—101 *et seq.* (West 1992))).

Plaintiff's suit arose from Bill's drowning death in Lake Michigan near Edison's power plant in Waukegan, Illinois, on September 14, 1990. Plaintiff claimed that Bill drowned when he could not escape dangerous currents caused by the plant's discharge of large amounts of water into Lake Michigan.

Edison's plant (the plant) is located on the shore of Lake Michigan in Waukegan. The plant draws lake water through intake valves, uses the water in the plant in the production of electricity, and discharges the water in a warmed condition back into the lake through a discharge channel. The warm water attracts fish, making the area around the discharge channel a good place for fishing.

In 1972, after residents expressed an interest in fishing in the vicinity of the discharge channel, Edison and Waukegan entered into a fishing rights agreement. Pursuant to this agreement, Waukegan agreed to police the area and Edison made a pier available to the public for fishing, but prohibited the public from entering the water. On its land near the pier, Edison posted signs prohibiting swimming and wading.

On September 14, 1990, the weather in the vicinity of Edison's pier was warm and windy and the water was rough. Small craft warnings had been issued and there were waves of up to six or seven feet. Around 3 p.m., Bill and five friends went to the pier for a frolic. The plant was operating and discharging water into the discharge channel.

After three of his friends entered the water, Bill jumped from the pier into a large wave. When he jumped into the water, Bill was fully clothed wearing pants, a T-shirt, and combat boots. One witness testified that Bill was also wearing a jacket.

Shortly after jumping into the water, Bill started to struggle and yelled for help. Some of the others also had difficulties in the water but were able to get out of the water by themselves or with the help of the two members of the group who stayed on the pier and had not entered the water.

Eventually, all of Bill's friends jointly tried to help him get out of the water. From the pier, they formed a human chain and tried to pull Bill out. They were able to reach him several times, but he kept slipping out of their hands. Bill was heavyset, and each time a wave raised him high enough so they could grab him, they lost their grip when the wave receded. There was no life-saving equipment on the pier. One of Bill's friends took off his pants and tried unsuccessfully to use them as a life line.

Bill began drifting away from the pier out into the lake. The pier has three ladders spaced along its length. After Bill drifted past the third ladder, the ladder nearest the deep end of the pier, one of Bill's friends jumped into the water to try to pull Bill out. That friend testified that "it was a real bad current under my feet." Unable to handle the current, the friend had the others pull him out.

Soon Bill drifted out past the end of the pier while the others could only watch helplessly. One of Bill's friends drove to a guard shack and alerted the Edison guards. By the time the friend returned to the pier, Bill had gone under and his other friends had lost sight of him. Three days later, police recovered Bill's body lodged against the grating that prevents debris from entering the plant intake valve.

Plaintiff proceeded to trial on her fourth amended complaint which contained eight counts. Counts I and VI alleged that Edison and Waukegan, respectively, engaged in willful and wanton misconduct and were therefore liable for the wrongful death of Bill. Counts II and VII alleged survival claims against Edison and Waukegan, respectively. Counts III and VIII sought funeral expenses from Edison and Waukegan, respectively, pursuant to the family expense act. Count IV alleged that Edison violated the Public Utilities Act (Ill. Rev. Stat. 1991, ch. 111$^{2}$/$_{3}$, par. 1—101 et seq. (now 220 ILCS 5/1—101 et seq. (West 1992))) and sought compensatory damages for the alleged violation. Count V sought punitive damages pursuant to the Public Utilities Act.

Prior to the trial, the trial court granted Edison's motion for summary judgment with respect to counts IV and V. Following the trial, the jury rendered a verdict in favor of defendants as to the remaining counts of plaintiff's fourth amended complaint. This appeal followed.

Plaintiff first contends that the trial court erred when it did not

allow plaintiff to introduce evidence of two prior accidental drowning deaths which occurred in 1988 in the lake waters near Edison's plant. Plaintiff sought to introduce the prior accident evidence to show that Edison knew of the dangerous conditions in the lake waters near its pier and to show that a common cause of the prior and present accidents was hazardous currents created by Edison's discharge of water into the lake. After a hearing on the matter, the trial court accepted defendants' arguments that the Appellate Court, Second District, unlike several other appellate court districts which followed *Henderson v. Illinois Central Gulf R.R. Co.* (1983), 114 Ill. App. 3d 754, required a showing that prior accidents were substantially similar to the present accident before evidence of the prior accidents was admissible, no matter what the intended purpose of the proffered evidence. Defendants cited *Davis v. International Harvester Co.* (1988), 167 Ill. App. 3d 814 (evidence of prior accidents admissible if proponent establishes accidents occurred in substantially similar manner). The trial court found that the prior accidents and the present accident were not substantially similar and granted defendants' motion *in limine* to exclude evidence of the prior accidents.

■ On appeal, the parties agree that the law governing the admissibility of prior accident evidence is stated in *Trimble v. Olympic Tavern, Inc.* (1993), 239 Ill. App. 3d 393, a second district case decided after the trial in this case, which states:

> "Evidence of prior occurrences is admissible at trial for two purposes: (1) to show the existence of a particular danger or hazard; or (2) to show defendant's notice of the generally hazardous nature of the accident site. (*Henderson v. Illinois Central Gulf R.R. Co.* (1983), 114 Ill. App. 3d 754, 758.) If the evidence is being offered to show the existence of a particular danger or hazard, then a foundation must be laid establishing the similarity between the prior accidents and the present accident. (*Henderson,* 114 Ill. App. 3d at 758.) Only similar accidents are relevant to show the existence of a particular danger. (*Henderson,* 114 Ill. App. 3d at 758.) It must also be clear (1) that the instrumentality which caused the danger in the earlier accidents was in substantially the same condition at the time such other accidents occurred as it was at the time of the accident complained of and (2) that the condition or thing shown to be the common cause of danger in such earlier accidents must be the condition or thing contributing to the danger of the accident complained of. *Simmons v. Aldi-Brenner Co.* (1987), 162 Ill. App. 3d 238, 246.
>
> If the evidence of prior accidents is being offered only to show the defendant's notice of the generally hazardous nature of the accident site, the proponent does not have to establish a foundation

showing the similarity between the prior accidents and the present accident. (*Henderson*, 114 Ill. App. 3d at 758.) Evidence of dissimilar prior accidents is relevant to the issue of whether the defendant knew the accident site was generally hazardous. (*Henderson*, 114 Ill. App. 3d at 758.) However, the proponent may not introduce details of the prior dissimilar accidents when he is offering the evidence only to show knowledge of the hazardous nature of the site. *Henderson*, 114 Ill. App. 3d at 758." *Trimble*, 239 Ill. App. 3d at 397.

*Trimble* did not specifically address a case where the proponent of evidence of prior accidents offered the evidence to show both the existence of a particular danger and the generally hazardous nature of the accident site. In such a case, the proponent is allowed to introduce evidence of both similar and dissimilar prior accidents, but the proponent is only allowed to introduce the details of substantially similar accidents. *Henderson v. Illinois Central Gulf R.R. Co.* (1983), 114 Ill. App. 3d 754, 759.

Defendants initially contend that plaintiff failed to make an adequate offer of proof regarding the excluded prior accident evidence and therefore failed to preserve the exclusion issue for review. After the trial court granted defendants' motion *in limine* to exclude the evidence, just before the trial, plaintiff's attorney made a purported offer of proof. Plaintiff's attorney stated:

"Specifically, the plaintiff submits through his lawyer and attorneys an offer of proof that if Michael Hughes was called to testify, which he was, with regard to the 1988 drownings he would testify as—consistently with what is already in the deposition attached to plaintiff's motion with regard to the [motion in] limine that's already in evidence.

The other witness, if Ralph Connard would be called to testify, Mr. Connard would testify consistently with the inquest testimony that he gave in 1988 with regard to Thomas Gilbert's occurrence. That inquest testimony is also attached to plaintiff's response to the motion *in limine* regarding other accidents, and that constitutes the two offers of proof of those two witnesses relating."

The question before us is whether plaintiff's purported offer of proof adequately preserved the issue for review. Our supreme court recently set out the basic principles regarding the adequacy of offers of proof relating to excluded evidence. The court stated:

"It is well recognized that the key to saving for review an error in the exclusion of evidence is an adequate offer of proof in the trial court. [Citations.] The purpose of an offer of proof is to disclose to the trial judge and opposing counsel the nature of the offered evidence and to enable a reviewing court to determine whether

exclusion of the evidence was proper. [Citation.] The failure to make an adequate offer of proof results in waiver of the issue on appeal. [Citations.]

Where an objection is sustained to the offered testimony of a witness, an adequate offer of proof is made if counsel makes known to the trial court, with particularity, the substance of the witness' anticipated answer. [Citation.] An offer of proof that merely summarizes the witness' testimony in a conclusory manner is inadequate. [Citation.] Neither will the unsupported speculation of counsel as to what the witness would say suffice. [Citation.] Rather, in making the offer of proof, counsel must explicitly state what the excluded testimony would reveal and may not merely allude to what might be divulged by the testimony. [Citation.] The offer serves no purpose if it does not demonstrate, both to the trial court and to reviewing courts, the admissibility of the testimony which was foreclosed by the sustained objection." *People v. Andrews* (1992), 146 Ill. 2d 413, 420-21.

■ Based on these principles, we conclude that plaintiff's offer of proof was not sufficient to preserve the alleged error for review. Although the transcripts attached to plaintiff's response to the motion *in limine* did make known to the trial court, with particularity, the substance of the anticipated answers of the two specified witnesses, the substance of the anticipated testimony was not sufficient to demonstrate the admissibility of the prior accident evidence under *Trimble* and *Henderson*.

Under the principles for the admission of prior accident evidence enunciated in *Trimble* and *Henderson*, prior accident evidence may be admissible for either or both of two purposes: (1) to show a particular hazard, or (2) to show the generally hazardous nature of the accident site. In this case, plaintiff sought to introduce the prior accident evidence for both purposes. We will separately address the adequacy of plaintiff's offer of proof for each of these purposes.

When prior accident evidence is offered to show the existence of a particular hazard, the proponent of the evidence must establish that the prior and present accidents were substantially similar in order for the prior accident evidence to be admissible. (*Trimble*, 239 Ill. App. 3d at 397.) Thus, under the principles in *Andrews*, if the evidence has been excluded, an offer of proof must demonstrate substantial similarity between the prior and present accidents or the offer of proof is inadequate. A detailed and specific offer of proof is necessary when the basis of the witness' testimony is not clear. *People v. Cobb* (1989), 186 Ill. App. 3d 898, 905.

Here, plaintiff sought to introduce prior accident evidence to show an alleged particular hazard in the form of the discharge

current from Edison's plant. Plaintiff claimed that the discharge current was the proximate cause of the two prior accidents and Bill's accident. Plaintiff's offer of proof regarding the discharge current as the common cause of the accidents was a partial transcript of the discovery deposition of plaintiff's civil engineering expert, Michael Hughes (Hughes). The transcript shows that Hughes based his opinion as to the cause of the two prior accidents on a coroner's report relating to each prior accident and sheriff's accident reports for each prior accident. Plaintiff only included part of one of the coroner's reports and did not include either of the accident reports with her offer of proof.

Although the existence of a common cause can be a factor in determining whether prior accident evidence is admissible to show a particular hazard, a proponent must also demonstrate that the accidents were substantially similar because only substantially similar accidents are relevant to show the existence of a particular hazard. (*Trimble*, 239 Ill. App. 3d at 397.) We conclude that plaintiff's offer of proof was not sufficient to demonstrate either common causation between the accidents or substantial similarity between the accidents.

Plaintiff's offer of proof did not adequately demonstrate a basis for Hughes' opinion as to common causation because the offer of proof only included a partial coroner's report as its basis for the opinion. This is a questionable basis on its face because coroner's reports are not admissible in themselves as evidence to prove or establish facts in controversy or to establish liability in a civil suit. (See Ill. Rev. Stat. 1991, ch. 110, par. 8—2201 (now 735 ILCS 5/8—2201 (West 1992)); *People v. Fiddler* (1970), 45 Ill. 2d 181, 185.) In addition, the partial coroner's report which was included with plaintiff's offer of proof consisted primarily of hearsay testimony. For these reasons, we conclude that the offer of proof did not sufficiently demonstrate a suitable basis for Hughes' opinion regarding common causation and therefore was inadequate.

Even if the offer of proof had demonstrated an adequate basis for Hughes' opinions, it was not sufficient to demonstrate substantial similarity. At the motion *in limine* hearing, defendants argued that the prior accidents were not substantially similar to the present accident. Plaintiff's offer of proof did not include any anticipated evidence as to one of the prior accidents except Hughes' recollections of the accident in his discovery deposition based on a coroner's report and an alleged sheriff's accident report. The anticipated evidence as to the other prior accident was part of a coroner's report consisting primarily of the hearsay testimony of a sheriff's policeman. This evi-

dence would not only have failed to refute defendants' arguments that the accidents were not substantially similar, but in fact corroborated the dissimilarity of the accidents because it tended to show the following: (1) the victims in the prior accidents did not enter the lake water in the same place or in the same manner as Bill, who jumped off a pier into four- to six- foot waves; (2) the victims in the prior accidents were actually in the discharge channel from Edison's plant when they were swept out into the lake, while Bill was not in the channel; (3) visible surface currents in the discharge channel swept the victims of the prior accidents into the lake while Bill was allegedly pulled into the lake by an invisible undertow; and (4) the prior accidents occurred on days when the lake was calm while Bill's accident occurred on a day with high winds and waves of up to seven feet in height.

For all these reasons, we cannot say that the trial court abused its discretion when it found that the prior accidents were not substantially similar to Bill's accident. Nor did plaintiff's offer of proof demonstrate that the prior accidents were substantially similar.

Because plaintiff's offer of proof was not sufficient to demonstrate the admissibility of the prior accidents for the purpose of showing a particular hazard, plaintiff has waived the issue on appeal.

When prior accident evidence is offered to show the generally hazardous nature of the accident site, the proponent of the evidence must show that the accidents occurred at the same site. (See *Trimble*, 239 Ill. App. 3d at 397.) At the motion *in limine* hearing, defendants argued that the prior accidents did not occur at the same site as Bill's accident. The trial court granted defendants' motion *in limine* to exclude the evidence. In order to show that the prior accident evidence was improperly excluded, under the principles in *Andrews*, plaintiff's offer of proof had to demonstrate that the accidents occurred at the same site. We conclude that plaintiff's offer of proof was inadequate because it did not do that and therefore did not demonstrate that the evidence was admissible.

Plaintiff's offer of proof with respect to one of the prior accidents was a transcript from a coroner's inquest in which Ralph Connard, a sheriff's policeman, testified that the accident occurred in "the outtake channel of the Commonwealth Edison plant." Thus, plaintiff's offer of proof established that the prior accident in question occurred in Edison's discharge channel.

Plaintiff did not include any direct testimony with regard to the other prior accident. According to Hughes' discovery deposition, Hughes would testify, based on the coroner's report and unspecified

accident reports, that the other prior accident involved a canoe which capsized in the discharge channel. Hughes would also testify that one of the canoeists drowned when he attempted to swim to shore through the discharge channel and was swept out into the lake by the discharge channel current.

Plaintiff's offer of proof did not address where Bill's accident occurred in relation to the prior accidents. Plaintiff's offer of proof did not refute defendants' arguments that Bill was not in the discharge channel when he began to have difficulty in the lake water like the victims in the prior accidents. Thus, plaintiff's offer of proof simply did not demonstrate that the prior accidents and the present accident occurred at the same site and therefore did not demonstrate that the prior accidents were admissible for the purpose of showing the generally hazardous nature of the site. Accordingly, plaintiff has waived this issue on appeal.

In summary, we conclude that plaintiff's offer of proof failed to demonstrate the admissibility of the excluded prior accident evidence for either of the purposes for which it was offered. Because the offer of proof did not demonstrate the admissibility of the evidence, the offer of proof was inadequate and the issue of the exclusion of the evidence is deemed waived on appeal.

Plaintiff next contends that the trial court erred when it did not allow the admission of evidence that Edison posted new warning signs subsequent to the present accident. Plaintiff also contends that the trial court erred when it did not allow the admission of evidence of a subsequent drowning death.

■ Plaintiff has not cited any authority for her contention that failure to admit evidence of a subsequent accident was erroneous, and we may reject the contention for that reason alone. (*Amp-Rite Electric Co. v. Wheaton Sanitary District* (1991), 220 Ill. App. 3d 130, 166.) In addition, plaintiff has not cited to the record to support her contention that the trial court excluded the evidence in question, and we may therefore consider the contention waived. (*Mielke v. Condell Memorial Hospital* (1984), 124 Ill. App. 3d 42, 49.) Accordingly, we will only address plaintiff's contention regarding the warning signs and will not further address the alleged subsequent drowning.

Plaintiff alleges that Edison erected new warning signs after the present accident. Plaintiff claims the signs stated "Danger. Dangerous Currents Could Result in Serious Injury or Drowning."

Plaintiff argues that the signs constitute subsequent remedial measures which are admissible for impeachment or to show the feasibility of precautionary measures. Specifically, plaintiff asserts that the admission of evidence of the new signs would impeach the

testimony of defendants' witnesses that the area was not dangerous or that the old signs were adequate.

■ Subsequent remedial measures are not admissible to prove negligence or willful and wanton conduct. (*Schaffner v. Chicago & North Western Transportation Co.* (1989), 129 Ill. 2d 1, 14-16.) This is because: (1) subsequent carefulness does not imply prior culpable conduct; and (2) as a matter of public policy, defendant should not be deterred from correcting unsafe conditions by the possibility that making the corrections would be deemed an admission of culpability. *Schaffner*, 129 Ill. 2d at 14.

Plaintiff is correct that evidence of subsequent remedial measures may be admissible for impeachment purposes. (*Hunter v. Chicago & North Western Transportation Co.* (1990), 200 Ill. App. 3d 458, 471.) However, we find that the evidence in question here does not impeach the testimony of defendants' witnesses. At issue here is whether the current from Edison's discharge of water into the lake caused Bill to drown and, if so, whether defendants had knowledge of the danger. Although the subsequent signs warn of dangerous currents, they do not necessarily refer to currents caused by the plant discharge. Moreover, the signs do not impeach the testimony of any of defendants' witnesses that they were not aware at the time of their testimony that the discharge current was dangerous. Because the new signs do not show that such statements were untruthful, the signs cannot be said to impeach the testimony of defendants' witnesses.

Nor may the evidence of subsequent remedial measures be justified on the ground of feasibility. There is nothing in the record to show that defendants disputed the feasibility of erecting signs with additional warnings. See *Schaffner*, 129 Ill. 2d at 17.

For these reasons, we conclude that the trial court did not err when it granted defendants' motion *in limine* barring the admission of evidence concerning these subsequent remedial measures.

Plaintiff next contends that the trial court erred when it applied the Recreational Use Act (Ill. Rev. Stat. 1991, ch. 70, pars. 31 through 37 (now 745 ILCS 65/1 through 7 (West 1992))) with its willful and wanton standard of liability to this case. Plaintiff's argument, simply put, is that the Recreational Use Act did not apply because Edison did not satisfy the Act's requirement that it be the owner of the land where the accident occurred.

■ Edison contends that the issue is not properly before us because plaintiff elected to abandon her claims based on a negligence standard of liability and proceeded to trial on a willful and wanton theory and is therefore bound to that theory on appeal. Edison also contends that no appeal lies on this issue because there was no trial

court order on this issue from which plaintiff can appeal. We disagree with both of these contentions.

It is true that plaintiff elected to amend her complaint based on a negligence theory and proceeded to trial on a willful and wanton theory before the trial court ruled on Edison's motion to dismiss plaintiff's complaint. However, the record shows that plaintiff learned during pretrial proceedings that Edison had taken the position that it did not own the lake waters where Bill drowned. Subsequently, plaintiff raised the issue of the proper application of the Recreational Use Act when Edison averred it was not the owner of the lake water. The trial court denied plaintiff's motion on the matter. In its posttrial motion for a new trial plaintiff specifically raised the issue.

Based on this record, we find that plaintiff preserved the issue of the proper application of the Recreational Use Act for appeal. Where a party moves the trial court on a question, the court rules on the question, and the party raises the question in a post-trial motion, the question is preserved for appellate review. *In re Marriage of Pickholtz* (1988), 178 Ill. App. 3d 512.

We turn now to the question of whether the trial court erred when it ruled that the Recreational Use Act applied to this case.

■ The purpose of the Recreational Use Act "is to encourage *owners of land* to make land and water areas available to the public for recreational or conservation purposes by limiting their liability toward persons entering thereon *for such purposes.*" (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 70, par. 31 (now 745 ILCS 65/1 (West 1992)).) The Recreational Use Act provides in part:

"§ 2. As used in this Act, unless the context otherwise requires:

(a) 'Land' includes roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.

(b) 'Owner' includes the possessor of any interest in land, whether it be a tenant, lessee, occupant, the State of Illinois and its political subdivisions, or person in control of the premises.

\* \* \*

§ 3. Except as specifically recognized by or provided in Section 6 of this Act, an owner of land owes no duty of care to keep the premises safe for entry or use by any person for recreational or conservation purposes, or to give any warning of a natural or artificial dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

\* \* \*

§ 6. Nothing in this Act limits in any way any liability which otherwise exists:

(a) For willful and wanton failure to guard or warn against a dangerous condition, use, structure, or activity." Ill. Rev. Stat. 1991, ch. 70, pars. 32, 33, 36 (now 745 ILCS 65/2, 3, 6 (West 1992)).

Thus, if the Recreational Use Act applies to Edison in this case, plaintiff would be required to show that Edison acted in a willful and wanton manner in order to find Edison liable for Bill's death. Plaintiff argues that the Recreational Use Act does not apply because it only applies to an "owner of land" and Edison did not own the lake water in which Bill drowned. Plaintiff maintains that there is no question as to whether Edison owns the lake water because in an affidavit an Edison spokesperson averred that drownings occurring in Lake Michigan did not occur on Edison property. Plaintiff argues that Edison could not set the lake water aside for use under the Recreational Use Act because it did not own the water. Plaintiff concludes that because the Recreational Use Act did not apply, Edison did not have qualified immunity from the ordinary negligence standard and the case should have been presented to the jury under the ordinary negligence standard of liability rather than the willful and wanton standard.

The question presented to us is whether Edison was an "owner of land" with respect to the lake water near its land within the meaning of the Recreational Use Act. The plain language of the statute clearly includes "water" in its definition of "land." (Ill. Rev. Stat. 1991, ch. 70, par. 32(a) (now 745 ILCS 65/2(a) (West 1992)).) The statute also includes one who is "in control of the premises" in its definition of "owner." (Ill. Rev. Stat. 1991, ch. 70, par. 32(b) (now 745 ILCS 65/2(b) (West 1992)).) Thus, one in control of water could be an owner of land within the meaning of the Recreational Use Act.

Edison had control of the water near its land at least to the extent that it could prohibit entry into or onto the water from its land or its pier. This is clear from the fishing rights agreement Edison made with Waukegan. That agreement provided, in part:

"(4) No swimming will be permitted in the basin nor in Lake Michigan south of the north boundary of Edison's property; this rule shall be enforced by appropriate police regulation of the City."

■ This agreement shows that Edison had substantial control of the lake waters near its land and pier. Edison could call on the Waukegan police to enforce its control of the lake waters. Based on its control of the lake waters near its land and pier, we find that Edison was an owner of land with respect to the lake water near its land and pier within the meaning of the Recreational Use Act.

Because Edison was an owner of land under the Recreational Use Act with respect to the lake water near its land and pier, the trial

court was correct in its ruling that the Recreational Use Act applied to this case. Accordingly, Edison did not forfeit the limited immunity of the willful and wanton standard with respect to persons who entered the lake water from its land or pier. Any other construction of the statute would tend to defeat its purpose because land owners would be unlikely to make their land and water areas available to the public for recreational purposes if they lost the limited immunity of the willful and wanton standard with respect to a person who ventured into the water.

The final issue on appeal is whether the trial court erred when it granted summary judgment in Edison's favor as to counts IV and V of plaintiff's fourth amended complaint. Count IV alleged that Edison failed to comply with sections 8—507 and 5—201 of the Public Utilities Act (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 1—101 *et seq.* (now 220 ILCS 5/1—101 *et seq.* (West 1992))) by not reporting to the Illinois Commerce Commission (Commission) two prior drowning accidents and a prior boating accident in the lake water near Edison's plant. Count IV further alleged that Edison's failure to comply with section 8—507 was a proximate cause of Bill's drowning death because it resulted in the Commission not investigating the prior accidents and not taking remedial measures to rectify the dangerous condition of the lake water near Edison's discharge channel.

Count V alleged that Edison willfully and wantonly failed to report the prior accidents to the Commission and seeks punitive damages for this alleged willful and wanton misconduct under section 5—201 of the Public Utilities Act (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 5—201 (now 220 ILCS 5/5—201 (West 1992))).

■ Section 8—507 of the Public Utilities Act states:

"Every public utility shall file with the Commission, under such rules and regulations as the Commission may prescribe, a report of every accident occurring to or on its plant, equipment, or other property of such a nature to endanger the safety, health or property of any person. Whenever any accident occasions the loss of life or limb to any person, such public utility shall immediately give notice to the Commission of the fact by the speediest means of communication, whether telephone, telegraph or post.

The Commission shall investigate all accidents occurring within this State upon the property of any public utility or directly or indirectly arising from or connected with its maintenance or operation, resulting in loss of life or injury to person or property and requiring, in the judgment of the Commission, investigation by it, and shall have the power to make such order or recommendation with respect thereto as in its judgment may seem just and

reasonable." Ill. Rev. Stat. 1991, ch. 111²/₃, par. 8—507 (now 220 ILCS 5/8—507 (West 1992)).

Section 5—201 of the Public Utilities Act states:

"In case any public utility shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done either by any provisions of this Act or any rule, regulation, order or decision of the Commission, issued under authority of this Act, the public utility shall be liable to the persons or corporations affected thereby for all loss, damages or injury caused thereby or resulting therefrom, and if the court shall find that the act or omission was wilful, the court may in addition to the actual damages, award damages for the sake of example and by the way of punishment. An action to recover for such loss, damage or injury may be brought in the circuit court by any person or corporation." Ill. Rev. Stat. 1991, ch. 111²/₃, par. 5—201 (now 220 ILCS 5/5—201 (West 1992)).

Our search of the record did not disclose any reasoning that served as a basis for the trial court's granting of Edison's motion for summary judgment. Edison argued below that it had no duty to report the prior accidents under the Public Utilities Act because the accidents did not occur on Edison's property, having occurred in the lake water which it did not own. Edison also argued that even if it had a duty to report the prior accidents, plaintiff failed to establish that the failure to report the accidents proximately caused Bill's drowning.

On appeal, Edison contends that the trial court accepted its arguments and correctly granted its motion for summary judgment based on these arguments. Plaintiff contends that Edison did have a duty to report the prior accidents under the Public Utilities Act because the Public Utilities Act does not require "ownership" to invoke the reporting requirement. Plaintiff argues that Edison's failure to report the prior accidents violated the Public Utilities Act and therefore constituted negligence as a matter of law. Plaintiff also argues that the jury should have been given an opportunity to determine whether Edison's failure to report the prior accidents was a contributing cause of Bill's death and that summary judgment on this issue was therefore improper.

Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c) (now 735 ILCS 5/1—1005(c) (West 1992)).) Summary judgment should be encouraged as an aid in the ex-

peditious disposition of a lawsuit; however, it is a drastic means of disposing of litigation and should only be allowed when the right of the moving party is clear and free from doubt. (*Kuwik v. Starmark Star Marketing & Administration, Inc.* (1993), 156 Ill. 2d 16, 31, citing *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) The court should construe all the evidence before it strictly against the movant and liberally in favor of the nonmovant. (*Colvin v. Hobart Brothers* (1993), 156 Ill. 2d 166, 170.) When a defendant moves for summary judgment, the plaintiff need not prove her case at this preliminary stage, but she must present some factual basis that would arguably entitle her to judgment. (*Smith v. Armor Plus Co.* (1993), 248 Ill. App. 3d 831, 839.) A reviewing court will not reverse an order granting summary judgment unless it finds that a material question of fact is present and the moving party is therefore not entitled to judgment as a matter of law. *Chmielewski v. Kahlfeldt* (1992), 237 Ill. App. 3d 129, 137.

In order to recover for a defendant's violation of a statute or rule designed to protect human life or property, a plaintiff must show: (1) the kind of injury suffered by the injured person was the kind of injury which the statute or rule sought to prevent; (2) the injured person belonged to the class of persons whom the statute was intended to protect from injury; and (3) the violation proximately caused the injury. (*Gouge v. Central Illinois Public Service Co.* (1991), 144 Ill. 2d 535, 543.) We find that section 8—507 of the Public Utilities Act, the statute Edison allegedly violated in this case, was designed to protect human life or property. Edison does not argue that the injuries in question in this case, accidental drowning deaths, were not the kind sought to be prevented by section 8—507. However, Edison's first argument on appeal, that the statute does not apply to the prior drowning deaths because they did not occur on Edison's property, is tantamount to an argument that the injured persons were not in the class of persons whom the statute sought to protect. Edison also argues that even if the statute applied, liability cannot lie because as a matter of law plaintiff did not establish proximate cause. We will address these arguments individually.

The plain words of section 8—507 show that the class of persons intended to be protected is "any person" whose safety, health or property is endangered by an "accident occurring to or on [a public utility's] plant, equipment or other property." (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 8—507 (now 220 ILCS 5/8—507 (West 1992)).) To protect members of this class, section 8—507 requires a public utility to file a report of any accident involving a member of the class. Edison argues that it was not required to file reports of the two drowning deaths

which occurred in 1988 because the drownings occurred in the lake waters which are not part of its property.

The evidence in the appeal record shows that in each of the 1988 drowning accidents the victims drowned accidentally in the waters of Lake Michigan. The body of each victim was found in the lake waters. Although each victim may have entered the lake waters from Edison's property, the accidents did not occur on Edison's "plant, equipment, or other property" unless the lake water is part of Edison's property.

Among the evidence before the court when it granted Edison's motion for summary judgment was an affidavit from an Edison employee in Edison's real estate department averring that Edison did not own "those portions of Lake Michigan which adjoin the plant." The affidavit also concluded that if drownings occurred in lake waters they did not occur on Edison's plant or property. Thus, unless the lake waters can be construed as part of Edison's property under section 8—507, drowning deaths which occurred in lake waters would not fall within the protected class.

■ We conclude that lake waters cannot be construed as Edison property under section 8—507. We reach this conclusion because section 8—507 simply refers to "property" without any elaboration. Because the Public Utilities Act has been held to be in derogation of the common law and must therefore be construed "strictly in favor of the persons sought to be subjected to its provisions" (*Diamond v. General Telephone Co.* (1991), 211 Ill. App. 3d 37, 49), we must agree with Edison that the lake waters were not its property.

Plaintiff's argument that paragraph two of section 8—507 should be considered in determining the definition of property in paragraph one is unpersuasive. Paragraph two is directed at the responsibilities of the Commission with respect to accidents involving public utilities. (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 8—507 (now 220 ILCS 5/8—507 (West 1992)).) Although we agree with plaintiff that the scope of accidents the Commission must investigate is broader than the scope of accidents public utilities must report, we do not agree that this means that public utilities must also report accidents within a broader scope than the first paragraph of section 8—507 requires.

For all these reasons, we conclude as a matter of law that Edison did not violate section 8—507 when it did not report the 1988 drowning deaths to the Commission. Accordingly, the trial court did not err when it granted Edison's motions for summary judgment as to counts IV and V of plaintiff's fourth amended complaint.

Although the foregoing is dispositive of this issue, we will briefly discuss the question of proximate cause. Edison argued that the trial

court properly granted its motion for summary judgment because, even if a section 8—507 reporting violation occurred, plaintiff could not establish that a reporting violation proximately caused Bill's drowning. We agree.

What constitutes the proximate cause of an injury is ordinarily a question of fact to be decided by a jury, but it can be a question of law where there are no reasonable differences in the inferences to be reasonably drawn from the undisputed facts. (*Smith,* 248 Ill. App. 3d at 840.) Absent affirmative and positive evidence that a defendant may have proximately caused injuries, a plaintiff fails to establish the existence of a genuine issue of material fact. (*Chmielewski,* 237 Ill. App. 3d at 137.) The mere possibility of a causal connection is insufficient to raise the requisite inference of fact. (*Housh v. Swanson* (1990), 203 Ill. App. 3d 377, 381.) Liability may not be based on surmise or conjecture as to what might have happened to cause an injury. *McCormick v. Maplehurst Winter Sports, Ltd.* (1988), 166 Ill. App. 3d 93, 98.

Here, we find the evidence before the court when it made its summary judgment ruling was too conjectural to support a reasonable inference that Edison's nonreporting of the 1988 drownings proximately caused Bill's drowning. Even if the Commission would have investigated as plaintiff argued, any subsequent actions by the Commission are merely conjectural. Moreover, a final speculative leap is required in order to draw a causal connection between possible remedial actions taken by the Commission and the prevention of Bill's death. Summary judgment was proper in this case because plaintiff failed as a matter of law to establish proximate cause.

Based on the foregoing, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

WOODWARD and QUETSCH, JJ., concur.