PETER MROZ, Adm'r of the Estate of Eric Mroz, Deceased, Plaintiff, v. WASTE MANAGEMENT OF ILLINOIS, INC., Defendant and Third-Party Plaintiff-Appellant (Charlotte M. Cook, Third-Party Defendant-Appellee).

First District (6th Division)    No. 1—95—4324

Opinion filed February 7, 1997.

O'Connor, Schiff & Myers, of Chicago (Neil D. O'Connor, Kevin F. Dono-
hue, and Loretta M. Griffin, of counsel), for appellant.

James W. Fessler and Michael Resis, both of Querrey & Harrow, Ltd., of
Chicago, for appellee.

JUSTICE THEIS delivered the opinion of the court:

Third-party plaintiff, Waste Management of Illinois, Inc. (Waste
Management), appeals the trial court's order granting third-party
defendant's motion for summary judgment. We affirm.

While driving her car, third-party defendant Charlotte Cook encountered a garbage truck that she could not pass. Cook and the truck driver repeatedly gestured at each other to move. After several minutes, the driver of the truck finally reversed. In doing so, the truck hit and killed the minor son of plaintiff Peter Mroz.

Plaintiff Peter Mroz sued the truck driver's employer, Waste Management. Waste Management then filed a third-party action for contribution against Cook. Waste Management alleged that: (1) Cook blocked the roadway and prevented the truck from proceeding; (2) Cook failed to keep a lookout; (3) her conduct caused the driver to back up; (4) she failed to sound her horn to warn the driver of the child's presence; and (5) Cook's negligence was the proximate cause of the death of plaintiff Peter Mroz's son.

Cook denied the allegations and filed a motion for summary judgment based upon deposition testimony. In her deposition testimony, Cook stated that she turned left onto Ridgeway, a sloped street, where she encountered the garbage truck. While she originally believed there was room for the two vehicles to proceed, it soon became apparent that the street was too narrow. The truck was at a 45-degree angle and the driver's door was open. Cook waited for the driver, Thomas Slotowski, to move into the cab of his truck. Slotowski entered the truck and drove it forward, within a few feet of Cook's car. Slotowski motioned for Cook to reverse her car. Cook stated that she was afraid to reverse, as shrubs on the corner behind her blocked her view of oncoming traffic, and gestured at Slotowski to reverse.

The two parties repeatedly gestured at each other to reverse their vehicles. Finally, Slotowski reversed his truck. As Cook proceeded, she noticed something under the truck's wheels. Cook could see under the truck, as she was in a small car downhill from Slotowski. The two drivers exited their vehicles and Slotowski looked under the truck. When the truck had reversed, it had run over the plaintiff's minor son.

In his deposition testimony, Slotowski stated that Cook started the gesturing, pointing her finger at him to move. Slotowski then pulled his vehicle toward Cook's, as an attempt to "get [Cook] to move." Instead of reversing, Cook made a call on her cellular phone. Slotowski described the situation as a stalemate. Finally, Slotowski checked his mirrors and reversed. Slotowski acknowledged that most accidents occurred while reversing. Despite this knowledge, Slotowski failed to get out of his truck to check behind him, as required by Waste Management regulations. Slotowski stated that he believed everything was clear behind him or else Cook would not have been gesturing for him to reverse. However, Slotowski admitted that he

did not believe that Cook was guiding or instructing him on how to reverse.

The trial court granted Cook's motion on two grounds. The court determined that Cook owed no duty to the decedent under these facts. In addition, the court concluded that Cook's conduct was not the proximate cause of the accident. Waste Management appeals. Because we find that the trial court properly determined that Cook had not voluntarily assumed a duty of care toward Slotowski, we need not reach the issue of proximate cause.

■ We review orders granting summary judgment under a *de novo* standard. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Ignarski v. Norbut*, 271 Ill. App. 3d 522, 648 N.E.2d 285 (1995). All reasonable inferences are drawn in favor of the nonmoving party. However, the court is not required to make a "speculative leap" based upon evidence that is "too conjectural to support a reasonable inference." *Turgeon v. Commonwealth Edison Co.*, 258 Ill. App. 3d 234, 252, 630 N.E.2d 1318, 1331 (1994). While Waste Management is not required to prove its case at this stage, unsupported allegations in the complaint will not save Waste Management from summary judgment. *Ralston v. Casanova*, 129 Ill. App. 3d 1050, 473 N.E.2d 444 (1984).

■ On appeal, Waste Management argues that the trial court erred in ruling that Cook did not owe a duty to carefully guide the truck driver as he reversed. The existence of a duty of care is a prerequisite to a plaintiff's recovery. *Turgeon v. Commonwealth Edison Co.*, 258 Ill. App. 3d 234, 252, 630 N.E.2d 1318, 1331 (1994). "Factors relevant in determining whether a duty exists include: the foreseeability of injury, the likelihood of injury, the magnitude of the burden of guarding against the injury, the consequence of placing that burden on the defendant, and the possible seriousness of the injury." *Diaz v. Krob*, 264 Ill. App. 3d 97, 99, 636 N.E.2d 1231, 1233 (1994).

■ The parties do not dispute that, under common law, a motorist typically owes no duty to signal or warn another driver as to whether it is safe to proceed. See *Luna v. Pizzas by Marchelloni*, 279 Ill. App. 3d 402, 664 N.E.2d 1112 (1996). However, Illinois courts have recognized that, even in the absence of a duty imposed by law, one may assume a duty where she gratuitously renders services to another. *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 665 N.E.2d 1260 (1996).

■ In determining whether to impose a duty where none exists at law, Illinois courts limit the scope of an assumed duty to the extent of the undertaking. *Rhodes*, 172 Ill. 2d 213, 665 N.E.2d 1260. For

example, the Illinois Supreme Court found that a railroad conductor's phone calls to the police about the presence of an injured man in a railroad station did not justify imposing a burden upon the railroad to rescue the man. *Rhodes*, 172 Ill. 2d 213, 665 N.E.2d 1260. In evaluating such claims, the intent of the party who allegedly assumed the duty and the extent of the guidance she offered are relevant considerations. *Petersen v. U.S. Reduction Co.*, 267 Ill. App. 3d 775, 641 N.E.2d 845 (1994). Finally, before imposing such a duty, we must examine its impact upon public policy. *Rhodes*, 172 Ill. 2d 213, 665 N.E.2d 1260.

Two Illinois cases address the issue of whether a motorist has voluntarily assumed a duty to safely signal another: *Luna v. Pizzas by Marchelloni*, 279 Ill. App. 3d 402, 664 N.E.2d 1112 (1996), and *Diaz v. Krob*, 264 Ill. App. 3d 97, 636 N.E.2d 1231 (1994). In *Diaz v. Krob*, a pedestrian was crossing an intersection when the crosswalk sign started flashing "Don't Walk." 264 Ill. App. 3d at 100, 636 N.E.2d at 1233. The pedestrian ran to the median, where she made eye contact with a school bus driver stopped immediately north of the crosswalk. The bus driver motioned to the pedestrian to continue walking in front of the bus. The pedestrian was struck by another vehicle.

The pedestrian sued the bus driver and the school district, alleging that, by his gesturing, the bus driver voluntarily undertook to guide her safely across the street. The court dismissed the action, finding the gesture could only be interpreted as a mere courtesy allowing the pedestrian to pass in front of the bus. The court rejected the pedestrian's claim that a duty should be imposed because the bus driver was in a better position to see the oncoming traffic. The court noted that "whether a legal duty exists involves more than just foreseeability of possible harm; it also involves legal and social policies. *** [T]he magnitude of guarding against the injury and the consequence of placing that burden on the defendant weigh heavily in favor of finding no duty." *Diaz*, 264 Ill. App. 3d at 100, 636 N.E.2d at 1233-34.

In *Luna v. Pizzas by Marchelloni*, 279 Ill. App. 3d 402, 664 N.E.2d 1112 (1996), plaintiffs were driving westbound along Route 30. Defendant Luenemann was driving eastbound along Route 30 and was attempting to make a left-hand turn. Plaintiffs alleged that defendant Jacobson, stopped at a nearby railroad crossing, made eye contact with Luenemann and signalled that it was safe to make the turn. While turning, Luenemann struck the plaintiffs' vehicle.

The plaintiffs sued both Luenemann and Jacobson. Jacobson filed a motion to dismiss, claiming that he owed the plaintiffs no duty. The

trial court granted the motion. The appellate court reversed, finding the pleadings demonstrated that Jacobson's purpose in waving was to communicate to Luenemann it was safe to proceed. The court stated that "[p]laintiffs *may be able* to prove a set of facts establishing that defendants failed to act with due care after voluntarily undertaking to signal Luenemann that it was safe." (Emphasis added.) *Luna*, 279 Ill. App. 3d at 405, 664 N.E.2d at 1115.

■ Initially, we note that the procedural distinction between the instant case and *Diaz* and *Luna* is significant. Because we are reviewing an order granting summary judgment, not a motion to dismiss, we must find evidence indicating that Cook had undertaken to signal defendant that it was safe to reverse in order to survive this motion for summary judgment.

We find that the facts in the instant case more closely parallel those in *Diaz* rather than *Luna*. In *Luna*, the pleadings alleged that Jacobson's gesture constituted an unspoken agreement that it was safe to proceed. However, the *Diaz* court found the bus driver's gesture was a mere courtesy. The exchange between Cook and Slotowski was anything but courteous. Cook's purpose in gesturing was not to signal Slotowski that it was safe to proceed but, rather, to convince him to clear the road. We cannot infer any agreement or communication between the two that it was safe to reverse.

Accordingly, we find that an interpretation of Cook's gesturing that assumes a willingness to safely guide Slotowski is too expansive. In her deposition testimony, Cook stated that she was gesturing to Slotowski, not in an effort to guide his reversal, but to communicate her displeasure with her inability to proceed. Slotowski admitted that Cook did not provide him with guidance or assistance. Slotowski further acknowledged that Waste Management policies required him to exit the truck before reversing, as most accidents were caused while reversing. Slotowski stated that he was annoyed by Cook's behavior and described the situation as a stalemate.

Finally, it would be contrary to public policy concerns to impose an assumed duty in the instant case. We cannot find that Cook's conduct justifies imposing a duty upon her to safely assist Slotowski, where Slotowski disregarded established safety procedures.

Affirmed.

GREIMAN, P.J., and ZWICK, J., concur.