JOSEPH NOWAK, Plaintiff-Appellant, v. DONALD COGHILL *et al.*, Defendants-Appellees.

Second District    No. 2—97—0792

Opinion filed May 21, 1998.

Laurence M. Landsman and Alan F. Block, both of Block & Landsman, and Sherman C. Magidson, of Magidson & Sullivan, both of Chicago, for appellant.

Charles C. Hoppe, Jr., and Edwin R. Cummings, both of Knight, Hoppe, Fanning & Knight, Ltd., of Des Plaines, for appellees.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiff, Joseph Nowak, appeals from a circuit court order that granted summary judgment against him and in favor of defendants, Donald and Laurel Coghill. In his amended complaint, plaintiff alleged that he was injured as a result of defendants' negligence when he slipped and fell on an unnatural accumulation of snow on defendants' property.

On appeal, plaintiff contends that the grant of summary judgment in favor of defendants was improper because the trial court erred when it (1) found that there was not an unnatural accumulation of snow on defendants' driveway; (2) ruled that there was no evidence of an unnatural accumulation of snow that could be argued to be a proximate cause of plaintiff's fall and injuries; and (3) determined that the Dead-Man's Act (735 ILCS 5/8—201 (West 1996)) did not preclude certain testimony by defendant Laurel Coghill.

We note that defendant Donald Coghill died while this lawsuit was pending and that Laurel Coghill was appointed the representative of Donald's estate for this lawsuit. For convenience, when we refer to "defendant" we refer to Laurel Coghill.

Plaintiff's amended complaint alleged the following: at about 11 a.m. on January 2, 1994, plaintiff, who owned and operated a tow truck service, arrived at defendants' residential property in Fox Lake to provide towing services for defendants at defendants' request;

plaintiff parked his tow truck on defendants' sloped driveway; plaintiff exited the truck in order to get the keys to defendants' car, which had stalled at another location; defendants had previously shoveled snow from their driveway and piled the snow "along the side of the driveway," creating an unnatural accumulation of snow; because the driveway was narrow, plaintiff necessarily stepped on the piled snow when he exited the tow truck; after plaintiff received the keys from defendant and while he was still out of the tow truck, the tow truck began to roll backward down the driveway; plaintiff started down the driveway toward the moving tow truck; upon reaching the tow truck, plaintiff necessarily had to step in the piled snow on the side of the driveway in order to reach the driver's side door of the truck; and the piled snow caused plaintiff to fall, resulting in severe head injuries to plaintiff.

In their motion for summary judgment, defendants argued that (1) they owed no duty to plaintiff because any snow that was on the driveway after defendants had shoveled the driveway was a natural accumulation; (2) there was no evidence of negligence with respect to any unnatural accumulation of snow; and (3) plaintiff could not establish that any act or omission by defendants proximately caused his fall.

Defendants attached two depositions to their motion for summary judgment. One of the attached depositions was that of defendant, Laurel Coghill. Defendant's deposition testimony included the following: some time after 8 a.m. on the morning of January 2, 1994, defendant's car broke down about five miles from her home as she was returning home from work; it was overcast that day and there had been a little bit of snow for about a half hour starting around 10 a.m.; the snow was not heavy enough to accumulate, but it made the ground wet; the most recent snow prior to that day had started on the evening of December 31, 1993, and continued until about 5 p.m. on January 1, 1994; that snow caused an accumulation of about one-half inch; defendant and a friend had used shovels and a snow blower to clear defendants' driveway after that snow; they had pushed most of the snow off the driveway to the right side of the driveway as one faces the house, *i.e.*, the south side of the driveway; through a friend, defendant had arranged for plaintiff to come to defendant's house, pick up her car keys, and go get her car with his tow truck; when plaintiff arrived at defendant's residence, he pulled his tow truck onto the driveway about even with a set of concrete steps that connected the driveway to a sidewalk that led to the front porch of defendant's house; defendant was standing on her front porch waiting for plaintiff when he arrived; plaintiff got out of the truck and

walked to the front porch; on the front porch, defendant gave plaintiff her car keys; suddenly there was a "clink-clonk" sound and the tow truck started rolling down the driveway; when the sound occurred, plaintiff turned and, without saying anything, ran down to the driveway and down the driveway to try to catch the truck; although the truck was gaining speed, plaintiff reached the truck; when he reached the truck, plaintiff was on the grass which was wet; plaintiff managed to open the truck door, but he was "slipping and sliding around" and the door of the truck opened and hit plaintiff's head; this occurred just past a tree that was in defendant's yard near the driveway; when the door hit plaintiff, it knocked him down and apparently knocked him out because he just lay on the grass after he fell; and at the time plaintiff fell, the "line" separating the north side of the driveway and defendant's yard was not covered by snow or ice.

The other deposition attached to defendants' motion for summary judgment was plaintiff's. Plaintiff's deposition testimony included the following: plaintiff has only a limited recall of the events that occurred on January 2, 1994; plaintiff recalled parking his tow truck on defendants' driveway on that day but did not recall the exact spot on the driveway where he parked the truck; and plaintiff did not recall if there was snow on the driveway at the time but recalled snow in the area; plaintiff recalled that the driveway was rather narrow and that when he got out of the tow truck he stepped on a pile of snow; plaintiff could not recall the size or depth of the snow pile, but he did recall that the snow pile was hard; plaintiff recalled leaving the tow truck running and closing the door of the tow truck; plaintiff did not recall what course he took to get to the porch of defendants' house, but he remembered being at the door of the house; plaintiff recalled getting keys from a woman and hearing a noise; the next thing plaintiff could recall was when he "woke up in the hospital with brain surgery"; and plaintiff did not recall specifically whether he was on the driveway or on the area next to the driveway when he fell.

The record contains several other depositions. One of these is the deposition of plaintiff's adult son, Joseph S. Nowak (Joseph). Joseph's deposition testimony included the following: on January 2, 1994, after being notified of his father's accident, he went to the scene of the accident; he arrived at the scene while the ambulance that later took his father to the hospital was still there; his father was in the ambulance when he arrived; the tow truck at that time was against two trees in a neighbor's yard across the street from defendants' driveway; shortly after arriving at the scene, he talked to defendant; defendant was upset because her car keys were missing; defendant

told Joseph that plaintiff fell by the tree; Joseph searched for defendant's car keys and found them "on the grass" about 10 to 15 feet north of the driveway and about halfway between the tree and the concrete steps near the driveway; there was snow piled along the north side of the driveway as if someone had shoveled the driveway; the piled snow was about one foot wide and from four to six inches deep; and the piled snow was "right along the edge" of the north side of the driveway and was generally on the outside of the driveway.

The deposition of Robert Luerssen is also in the record. Luerssen's testimony included the following: he has been a Fox Lake police officer for about 20 years; on January 2, 1994, he was on duty and was called to defendants' residence in response to plaintiff's fall; he was the first police officer to arrive at the scene; he saw plaintiff's body lying on the ground near the tree; there was nothing to indicate that plaintiff's body had been moved before Luerssen arrived at the scene; plaintiff's body was lying in a north-south direction; plaintiff's body was lying on the "line" separating the north edge of the driveway from the yard; plaintiff's body was partly on defendants' driveway and partly on defendants' yard; plaintiff's feet and his legs, up to about his upper thighs, were on the driveway; the upper portion of his body was on the yard; Luerssen noticed snow on both the yard and the driveway; he did not recall any evidence of shoveling or any piles of snow; he observed plaintiff's footprints on the driveway near where the body was found; based on these footprints, Luerssen opined that plaintiff was on the driveway when he fell; Luerssen did not include this opinion in his official report of the incident because, based on defendant's account of the incident, Luerssen believed that the cause of plaintiff's fall was the door of the tow truck hitting plaintiff; and when Luerssen observed the tow truck sitting in the neighbor's yard, he noticed that the driver's door was open.

The deposition of Mary Ann Nowak (Mary), plaintiff's wife, is also in the record. Mary's testimony included the following: on January 2, 1994, she arrived at the scene of plaintiff's accident after plaintiff had been placed in the ambulance; the ambulance was still at the scene; there was no snow on the driveway, but the driveway was wet; there were snow piles on each side of the driveway as if the driveway had been shoveled or plowed; the snow piles were about three to four inches deep; some of the piled snow extended onto the driveway for about four inches on both sides of the driveway; and the piled snow that extended onto the driveway was along the entire length of the driveway on both sides of the driveway.

After conducting a hearing on the matter, the trial court entered an order granting defendants' motion for summary judgment. In oral

remarks made at the hearing, the trial court found that "there is no evidence of an unnatural accumulation [of snow or ice] which could be argued to be a proximate cause of the plaintiff's fall and injury." The trial court also found that Officer Luerssen's testimony did not support a finding of negligence against defendants because his testimony placed plaintiff "directly on the driveway as the site of the fall when, in fact, there is no evidence of an unnatural accumulation of snow and ice on the driveway itself." Plaintiff's timely notice of appeal followed.

■ In appeals from summary judgment rulings, we conduct a *de novo* review of the evidence in the record. *Berlin v. Sarah Bush Lincoln Health Center*, 179 Ill. 2d 1, 7 (1997). Summary judgment should be granted only if the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1996); *Berlin*, 179 Ill. 2d at 7. Although summary judgment is to be encouraged to expedite the disposition of lawsuits, it is a drastic procedure and should be allowed only when the right of the moving party to summary judgment is clear and free from doubt. *Pyne v. Witmer*, 129 Ill. 2d 351, 358 (1989).

■ Plaintiff's amended complaint alleged negligence on the part of defendants. To state a cause of action for negligence properly, a plaintiff must establish the following elements: that the defendant owed a duty of care to the plaintiff; that the defendant breached that duty; and that the breach was the proximate cause of the plaintiff's injuries. *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 116 (1995). The existence of a duty is a question of law for the court to decide, and the issues of breach and proximate cause are generally factual matters for a jury to decide, unless there is no genuine issue of material fact regarding those issues. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 114 (1995). If the plaintiff fails to establish an element of the cause of action, summary judgment for the defendant is appropriate. *Espinoza*, 165 Ill. 2d at 114.

The trial court did not make an explicit ruling regarding the duty element in this case. However, on appeal, both parties address the duty element and we will therefore also address it.

Plaintiff contends that defendants owed him a duty to remove properly the snow and ice on their driveway and that defendants breached that duty. Plaintiff bases his contention on two theories: (1) defendants' duty arose from a more general duty to provide plaintiff a reasonably safe means of ingress to and egress from their property;

and (2) defendants' duty arose from their voluntary undertaking to shovel their driveway.

Plaintiff concedes that defendants did not have a duty to remove natural accumulations of snow and ice from their driveway. However, plaintiff argues that once defendants undertook to shovel their driveway, they had a duty to prevent any unnatural accumulation of snow or ice on the driveway and, perhaps, even beyond the driveway. Plaintiff asserts that defendants breached their duty because in shoveling their driveway they created an unnatural accumulation of snow when they piled snow along the edges of the driveway on both sides of the driveway. Plaintiff focuses primarily on the alleged unnatural accumulation of snow up to four inches wide and from three to six inches deep that was on the surface of the driveway. However, plaintiff also suggests that defendants may have had a duty not to create an unnatural accumulation of snow even outside the boundaries of the driveway.

■ A property owner generally has no duty to remove a natural accumulation of snow and ice from his property. *Lansing v. County of McLean*, 69 Ill. 2d 562, 571 (1978). However, a property owner who voluntarily undertakes the removal of snow and ice can be subjected to liability where the removal results in an unnatural accumulation of snow or ice that causes injury to a plaintiff. *Graf v. St. Luke's Evangelical Lutheran Church*, 253 Ill. App. 3d 588, 591-92 (1993). Each such case turns on its own facts. *Johnson v. National Super Markets, Inc.*, 257 Ill. App. 3d 1011, 1016 (1994). As with any voluntary undertaking, the duty of care that arises from the undertaking is limited to the extent of the undertaking. *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 239 (1996).

■ In plaintiff's view, because the shoveled snow constituted an unnatural accumulation of snow, defendants' voluntary undertaking to shovel their driveway gave rise to a duty to do so in a way that the driver of any vehicle that subsequently happened to park on the driveway could exit the vehicle without stepping in the shoveled snow. We do not disagree with plaintiff that the shoveled snow, at least to the extent that it ran back onto the surface of the driveway, was an unnatural accumulation. See *Graf*, 253 Ill. App. 3d at 592. However, we do not believe that the scope of the duty of a residential property owner who undertakes to shovel his own driveway for his own purposes extends to the limits urged by plaintiff. Perhaps, a residential property owner who undertook to shovel his driveway knowing that a vehicle of a certain width would park on the driveway would have such a duty. But in this case, there is nothing to show that at the time they shoveled their driveway defendants knew that

plaintiff would park his tow truck on their driveway. In the absence of such knowledge or without a showing of an intent by defendants to shovel their driveway to accommodate a class of possible users that encompassed plaintiff and his tow truck, no duty existed for defendants to shovel their driveway so that plaintiff would not step in the shoveled snow when he exited his truck after parking it on defendants' driveway. Thus, defendants' voluntary undertaking to shovel their driveway did not give rise to a duty to shovel the driveway so that it would accommodate unexpected users such as plaintiff.

A court may take public policy considerations into account when determining the limits of a voluntarily undertaken duty. See *Rhodes*, 172 Ill. 2d at 240. As a matter of public policy, we believe it would be inappropriate to hold that a residential property owner who voluntarily undertakes to shovel his driveway must shovel the driveway in a way that the cleared surface is wide enough so that the driver of any vehicle that parks on the driveway will not step in the shoveled snow. Such a holding would surely discourage residential property owners from shoveling their own driveways for their own purposes.

For these reasons, we reject plaintiff's theory that a voluntary undertaking gave rise to a duty that could be a basis for liability in this case.

■ Plaintiff also contends that defendants had a duty to shovel their driveway so that it would accommodate plaintiff's tow truck based on a general duty to provide a safe means of ingress and egress for plaintiff. The limits of such a duty are determined by the facts of each case. *Kokoszynski v. Chicago South Shore & South Bend R.R.*, 243 Ill. App. 3d 343, 346 (1993). For the same reasons that the limits of the purported duty based on a voluntary undertaking did not extend to require defendants to completely shovel their driveway, the limits of a duty based on a duty to provide a safe means of ingress and egress did not extend to the limits urged by plaintiff. Accordingly, we reject plaintiff's theory that a general duty to provide a safe means of ingress and egress gave rise to a duty that could be a basis for liability in this case.

The cases relied on by plaintiff in arguing that defendants owed him a duty to completely clear their driveway are distinguishable from this case. In each of the cases cited by plaintiff, a property owner of commercial or church property contracted with a third party or parties to clear snow and ice from certain parts of their property, knowing that members of the public or members of the church would use those parts of the property, and the third party failed to completely clear the specified property of snow and ice. See *Ordman*

*v. Dacon Management Corp.*, 261 Ill. App. 3d 275 (1994) (snow-plowing company and/or maintenance staff failed to completely clear parking lot of apartment complex); *Johnson v. National Super Markets, Inc.*, 257 Ill. App. 3d 1011 (1994) (snowplowing company piled snow that melted and refroze on parking lot of grocery store); *Graf v. St. Luke's Evangelical Lutheran Church*, 253 Ill. App. 3d 588 (1993) (church custodians expected by church pastor to completely clear steps to church basement of snow and ice failed to do so); *McCarthy v. Hidden Lake Village Condominium Ass'n*, 186 Ill. App. 3d 752 (1989) (snowplowing company charged with removing all snow from driveways in condominium development failed to do so).

In this case, unlike the cases cited by plaintiff, defendants were owners of residential property who undertook to shovel their own driveway for their own use. Plaintiff has not pointed to anything in the record that indicates that defendants undertook to shovel their driveway with the intention of clearing it for others to use or with the knowledge that others were likely to use it. Consequently, the cases cited by plaintiff do not require us to hold that defendants' voluntary undertaking to shovel their driveway gave rise to a duty to plaintiff.

Our determination that defendants did not owe plaintiff a duty to shovel their driveway so that plaintiff would not have to step in the shoveled snow when he parked his tow truck on the driveway is dispositive of this case. Plaintiff's failure to establish the duty element of his negligence claim, by itself, entitles defendants to summary judgment. However, we will also address the proximate cause element of plaintiff's negligence claim.

■ The trial court based its ruling granting summary judgment in favor of defendants, in part, on its determination that plaintiff failed to establish the proximate cause element. As noted above, proximate cause is generally a question of fact. However, liability may not be based on speculation, imagination, or mere conjecture. *Kalata v. Anheuser-Busch Cos.*, 144 Ill. 2d 425, 437 (1991). Rather, proximate cause can only be established when there is a reasonable certainty that the defendant's act caused the plaintiff's injury. *Vance v. Lucky Stores, Inc.*, 134 Ill. App. 3d 166, 168 (1985). Although a plaintiff need not prove his case at the summary judgment stage of the proceedings, if he fails to present sufficient evidentiary facts to support the elements of his cause of action, including the proximate cause element, then summary judgment in favor of the defendant is appropriate. *Barker v. Eagle Food Centers, Inc.*, 261 Ill. App. 3d 1068, 1071 (1994).

In this case, plaintiff acknowledges that the only direct evidence

regarding the cause of his fall is the testimony of defendant. The gist of defendant's testimony, disregarding inconsistencies alleged by plaintiff, was that the door of the tow truck struck plaintiff while he was chasing the truck and caused him to fall. Defendant also testified that plaintiff was on the grass, which she described as "wet," when he fell.

■ The trial court ruled that the Dead-Man's Act (Act) (735 ILCS 5/8—201 (West 1996)) did not preclude defendant's testimony. Plaintiff contends that the trial court ruling was erroneous. It is not necessary for us to resolve this issue because we can completely disregard the part of defendant's testimony concerning the cause of plaintiff's fall and still resolve the proximate cause issue.

■ We also note that defendants contend that the trial court erred when it did not exclude Officer Luerssen's opinion testimony that plaintiff was on the driveway when he fell. Defendants argue that the court should have excluded this testimony because plaintiff did not make a timely disclosure that Luerssen would offer opinion testimony. It is unnecessary for us to resolve this issue because even if we include Luerssen's testimony it does not alter our determination as to the proximate cause element.

Plaintiff acknowledges that without defendant's testimony there is only circumstantial evidence as to the proximate cause of his fall. Plaintiff was the only person other than defendant present when he fell. However, plaintiff testified that he cannot remember anything about his fall from the time that he heard a sound while he was standing on defendants' porch until the time when he woke up in the hospital. Thus, the issue before us is whether plaintiff presented sufficient circumstantial evidence to establish the proximate cause element of his negligence claim.

■ A party may establish negligence by using either direct or circumstantial evidence. *Mort v. Walter*, 98 Ill. 2d 391, 396 (1983). Circumstantial evidence is the proof of facts and circumstances from which a fact finder may infer other connected facts that usually and reasonably follow, according to the common experience of mankind. *Housh v. Swanson*, 203 Ill. App. 3d 377, 381 (1990). Even where the circumstances support more than one logical conclusion, circumstantial evidence is sufficient to establish proximate cause to overcome a motion for summary judgment as long as the inference in question may reasonably be drawn from the evidence. *Mort*, 98 Ill. 2d 396-97. However, the mere possibility of a causal connection is insufficient to raise the requisite inference of fact. *Housh*, 203 Ill. App. 3d at 381.

The specific question before us is whether plaintiff presented sufficient circumstantial evidence to establish that the snow that he al-

leges was an unnatural accumulation on the surface of defendants' driveway caused him to fall. Critical to this inquiry is whether the circumstantial evidence sufficiently establishes that plaintiff was on the alleged unnatural accumulation of snow when he fell.

▉ After carefully reviewing the record in the light most favorable to plaintiff, we conclude that it is not reasonable to infer that plaintiff was on the snow piled on the edge of the driveway when he fell. Therefore, it is not reasonable to infer that the snow piled on the driveway caused plaintiff to fall.

Plaintiff argues that the testimony of Luerssen in connection with other evidence in the record creates questions of material fact sufficient to preclude summary judgment on the issue of causation. In his deposition testimony, Luerssen opined that plaintiff was on the driveway when he fell. Luerssen based his opinion on his observation of footprints on the driveway heading down toward the street and on the position of plaintiff's body after he fell. Luerssen testified that the position of plaintiff's body after he fell was such that his feet and lower legs were on the driveway and the rest of his body was on the yard next to the driveway. The other evidence relied on by plaintiff includes evidence concerning the width of the truck, the width of the driveway, and the width of the snow piled on and near the driveway. Plaintiff also relies on the "fact" that upon exiting and attempting to enter the truck plaintiff "necessarily" had to step on the snow piled on and near the driveway.

We are not persuaded that this evidence sufficiently establishes that the snow piled on the driveway proximately caused plaintiff to fall. Even assuming that Luerssen correctly concluded that plaintiff was on the driveway when he fell, that conclusion does not lead to an inference that he was on the piled snow on the driveway when he fell. Plaintiff's exact location when he fell is simply unknown. Adding the other factors relied on by plaintiff does not lessen the speculative nature of the evidence. Plaintiff's testimony that he stepped on the piled snow when he exited the truck does not lead to a reasonable inference that he must have been on the piled snow if and when he attempted to reenter the truck. The evidence relied on by plaintiff does not establish that plaintiff ever reached the truck or, if he reached it, that he was ever in a position to try to reenter it. Even if we assume that he got in such a position, the location of the truck in relation to the piled snow at that time would be, at best, a guess. The truck could have been the same distance away from the piled snow as when plaintiff exited the truck, but there is nothing to show that it was not some other distance away from the piled snow.

Compounding the speculative nature of all this is the fact that

the piled snow was not the only thing that might have caused plaintiff to slip and fall. In addition to the snow that had naturally accumulated on the yard, there was testimony that the shoveled surface of the driveway was wet from precipitation that had fallen that day. The witnesses who could recall the condition of the part of the surface of the driveway that had previously been shoveled by defendants testified that the driveway surface was either "wet" or covered with snow on the day plaintiff fell. Plaintiff therefore could have fallen while chasing the truck on the part of the driveway surface that defendants previously shoveled and did not have piled snow on it. Finally, the position of plaintiff's body does not show with any degree of conclusiveness that plaintiff was on the piled snow when he fell.

On this record, we conclude that plaintiff's circumstantial evidence simply failed to establish with reasonable certainty that defendants' acts caused plaintiff to fall. Accordingly, summary judgment in favor of defendants on the ground that plaintiff failed to establish the proximate cause element of his negligence claim was appropriate.

Plaintiff's reliance on *Ordman v. Dacon Management Corp.*, 261 Ill. App. 3d 275 (1994), does not require us to change our conclusion. In *Ordman*, the plaintiff's decedent died from injuries he suffered in a fall. The decedent was unable to testify as to what caused him to fall. There were no eyewitnesses who saw the decedent fall. *Ordman*, 261 Ill. App. 3d at 283. However, there was deposition testimony from a witness who testified that he heard the sound of the decedent falling and almost immediately found the decedent lying on a patch of ice about 10 feet wide. *Ordman*, 261 Ill. App. 3d at 278. With one justice dissenting, the appellate court determined that the circumstantial evidence in *Ordman* was sufficient to allow a jury to find that the patch of ice caused the fall. *Ordman*, 261 Ill. App. 3d at 284.

*Ordman* is distinguishable from this case because the circumstantial evidence regarding the cause of the fall in *Ordman* was far less speculative than the circumstantial evidence regarding the cause of plaintiff's fall in this case. In *Ordman*, the decedent was found lying on a large patch of ice, and there was no evidence that anything other than the patch of ice caused the fall or that he was not on the ice when he fell. In this case, plaintiff was found lying across a thin strip of piled snow that plaintiff asserts caused him to fall. However, it is quite possible that plaintiff was not on the piled snow when he fell. Moreover, other slippery surfaces were in close proximity to the thin strip of piled snow and could easily have caused plaintiff's fall because plaintiff was running after a truck that was rolling down a wet, sloped driveway when he fell.

Based on the foregoing, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

COLWELL and RATHJE, JJ., concur.