FOURTH DIVISION

FILED: 5/27/99

No. 1-98-3592

THOMAS R. CARMODY, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

v. )

)

THE RETIREMENT BOARD OF THE )

FIREMAN'S ANNUITY AND BENEFIT FUND ) 

OF CHICAGO, ) Honorable

) Thomas P. Durkin,

Defendant-Appellant. ) Judge Presiding.

JUSTICE HOFFMAN delivered the opinion of the court:

The defendant, the Retirement Board of the Fireman's Annuity and Benefit Fund of Chicago (the Board), granted the application of the plaintiff, Thomas R. Carmody, for occupational disease disability benefits and awarded him benefits at the rate of $1,879.25 per month.  The plaintiff sought administrative review in the circuit court, arguing that he was actually entitled to benefits at the rate of $2,792.40 per month.  The circuit court reversed the decision of the Board, ordering it to pay the plaintiff the greater benefit amount.  The Board now appeals.

The facts of this case are undisputed.  The plaintiff entered service with the Chicago fire department on October 16, 1966.  In 1980, the plaintiff was granted occupational disease disability benefits based on the fact that he suffered from severe bronchitis.  In August 1995, the Board notified the plaintiff that it was willing to attempt to provide him with an accommodation, in accordance with the Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. §12101 
et
 
seq
. (1995)), so that he could return to work.  On February 1, 1996, the plaintiff returned to work and was assigned to a position in the Fire Prevention Bureau (the Bureau).  When the plaintiff returned to work, his monthly occupational disease disability benefits, then $1,879.25, were stopped.  While working for the Bureau, the plaintiff earned a monthly salary of $4,296.

From September 23, 1996, to October 11, 1996, the plaintiff was on "lay up" due to bronchitis.  On October 24, 1996, the plaintiff again left work and went on a medical leave of absence, during which he continued to receive his monthly salary.  Thereafter, on June 27, 1997, his medical leave benefits apparently having been exhausted, the plaintiff was removed from the fire department's payroll.  He then filed another application for occupational disease disability benefits.

The Board conducted a hearing regarding the plaintiff's application on August 20, 1997.  The plaintiff did not appear at the hearing, either personally or through an attorney.  The transcript of the brief hearing reveals that the Board never questioned the plaintiff's entitlement to occupational disease disability benefits and focused instead on the amount he should be awarded.  The Board briefly questioned the Board's physician, Dr. George Motto, who had examined the plaintiff prior to the hearing, as to whether the disability preventing the plaintiff from performing his job at the Bureau was the same disability for which he had previously been awarded benefits.  When asked whether the plaintiff's current disability was the "same condition [for which] he went out before", Dr. Motto responded, "Yes, he is saying he is going out because of shortness of breath and recurrence of his symptoms."  The Board then voted to grant the plaintiff occupational disease disability benefits at the rate of $1,879.25 per month, the same monthly benefit he was receiving before he returned to work in February 1996.  The Board's benefit calculation sheet states, 
inter
 
alia
: "65% MONTHLY BENEFIT:  Due to the fact he was removed from occupational disability as of 1-31-96 and went back to dept. on 2-1-96 under ADA the Board granted him under his old occ. disability monthly amount $1879.25."

By letter dated August 29, 1997, the Board informed the plaintiff of its decision.  The plaintiff then filed an action for administrative review in the circuit court, contesting the amount of the benefit award.  He argued that it was improper for the Board to simply reinstate his prior benefit award.  The plaintiff asserted that, pursuant to section 6-151.1 of the Illinois Pension Code (40 ILCS 5/6-151.1 (West 1996)), the Board should have awarded him a monthly benefit payment of $2,792.40, or 65% of the monthly salary he earned while working at the Bureau.  
The trial court agreed, reversing the Board's decision and ordering that it pay the plaintiff monthly benefits of $2,792.40, retroactive to June 27, 1997.

It is undisputed that the plaintiff is entitled to occupational disease disability benefits pursuant to section 6-

151.1 of the Illinois Pension Code (Pension Code).  40 ILCS 5/151.1 (West 1996)).  The issue before us is the amount of benefits to which he is entitled.  The plaintiff, in reliance on section 6-151.1, argues that he is entitled to $2,792.40 per month.  The Board contends that the plaintiff has waived any objection to the amount of the benefit by his failure to object at the administrative hearing and, alternatively that, pursuant to sections 6-154 and 6-151.1 of the Pension Code, its benefit award was proper.  The construction of a statute is a question of law, and our review of the Board's decision, therefore, is 
de
 
novo
.  
Richard's Tire Co. v. Zehnder
, 295 Ill. App. 3d 48, 56, 692 N.E.2d 360 (1998).

We begin by addressing the Board's contention that the plaintiff has waived any objection to the amount of the benefit awarded because he did not appear and object at the hearing.  In support of its position, the Board cites 
Lebajo v. Department of Public Aid
, 210 Ill. App. 3d 263, 268, 569 N.E.2d 70 (1991), where the court stated that:

"The law in Illinois is well-established that, if an argument is not presented in an administrative hearing, it is waived and may not be raised for the first time before the trial court on administrative review.  [Citation.]  The rule is particularly applicable where, as here, the issue is one of construction or interpretation of the statutes and rules that most directly concern the agency's operations.  [Citation.]"

The Board correctly summarizes the principles of the doctrine of waiver.  We, nonetheless, find its application inappropriate in the given case.  The Board sent the plaintiff a notice of hearing which, in addition to advising him that he had the rights to be represented by an attorney at the hearing and to produce evidence and present witnesses, stated: "
IT IS NOT NECESSARY FOR YOU TO APPEAR IN PERSON
".  The notice did not inform the plaintiff that, if he failed to appear, any claim that the Board's decision was in error would be waived.  We further note that the doctrine of waiver is intended to prevent unfair surprise to one's opponent when the issue is raised for the first time on review.  
Ranquist v. Stackler
, 55 Ill. App. 3d 545, 549-50, 370 N.E.2d 1198 (1977).  Based on the statutory language discussed below, we cannot find that the Board was surprised or prejudiced by the plaintiff's claim that he is entitled to benefits equal to 65% of the salary he was earning at the time he was removed from the payroll on June 27, 1997.  Finally, we note that waiver is a limitation on the parties, not this court.  
In re W.C.
, 167 Ill. 2d 307, 323, 657 N.E.2d 908 (1995); 
Dineen v. City of Chicago
, 125 Ill. 2d 248, 265-66, 531 N.E.2d 347 (1988).

We now turn to the question at hand: what is the amount of benefit to which the plaintiff is entitled?  
Section 6-151.1 of the Pension Code provides that "[t]he occupational disease disability benefit shall be 65% of the fireman's salary at the time of his removal from the Department payroll."  40 ILCS 5/6-

151.1 (West 1996).  On the Board's benefit calculation sheet and in its letter to the plaintiff notifying him of its decision, the Board listed the plaintiff's date of removal from the payroll as June 27, 1997.  The plaintiff contends that, based on the language of the statute, he is clearly entitled to a monthly benefit payment equal to 65% of the monthly salary he was receiving on that date.

In defending its benefit award on appeal, the Board relies on sections 6-154 and 6-151.1 of the Pension Code (40 ILCS 5/6-

151.1, 6-154 (West 1996)).  The Board urges us to adopt its interpretation of those sections and find that the plaintiff is entitled to a monthly benefit payment of only $1,879.25.  While the interpretation given a statute by the agency charged with administering it may be relevant, it is not binding on this court.  
Branson v. Department of Revenue
, 168 Ill. 2d 247, 254, 659 N.E.2d 961 (1995).  

In support of its first argument, the Board relies on section 6-154 of the Pension Code which provides in part that: "No disability benefit shall be paid on account of any form of disability for any period of time for which a disabled fireman has a right to receive any part of his salary, under any law or ordinance in effect in the city."  40 ILCS 5/6-154 (West 1996).  The Board contends that the plaintiff's original disability never ceased.  Therefore, the Board asserts, when the plaintiff returned to work in February 1996, pursuant to its attempt to accommodate him in accordance with the requirements of the ADA, the plaintiff became a disabled fireman with a right to receive his salary.  As a result, the Board contends, it was precluded from paying the plaintiff his disability benefits during the period he was on the payroll.  When the plaintiff was removed from the payroll, though, the Board asserts, he was once again a disabled fireman not entitled to receive any part of his salary, and the proper course of action was to recommence his previously awarded disability benefits.

We cannot agree with the Board's assertion.  Under section 6-112 of the Pension Code, a "disability" is defined as "[a] condition of physical or mental incapacity to perform any assigned duty or duties in the fire service."  40 ILCS 5/6-112 (West 1996).  Section 6-151.1 provides that "any fireman who has completed ten or more years of service and is unable to perform his duties in the Fire Department" due to a disease of the lungs or respiratory tract resulting solely from his service with the fire department is entitled to occupational disease disability benefits.  40 ILCS 5/6-151.1 (West 1996).

When the plaintiff returned to work, he was assigned to a position in the Bureau in an attempt to accommodate his illness by removing him from exposure to the fumes and chemicals associated with fighting a fire.  It appears from the record before us that the plaintiff was able to perform his assigned duties in that position for a period of seven months before taking a two-week leave in September and going on medical leave shortly thereafter.  While the disease from which he suffered upon his second application for benefits was the same disease which had caused his first disability, we believe there was an intervening period of time during which the plaintiff was not disabled by that disease within the meaning of the Pension Code.  Therefore, we cannot agree with the Board that the plaintiff's original disability benefits of $1,879.25 per month were simply "tolled" while he attempted an unsuccessful return to work.

In addition, the Board's argument that the amount of the plaintiff's prior disability benefit should be reinstated conflicts with the clear language of section 6-151.1, which requires that an occupational disease disability benefit equal 65% of the fireman's salary at the time he is removed from the payroll.  40 ILCS 5/6-151.1 (West 1996).  The Board urges upon us a creative interpretation of section 6-151.1 in support of its benefit award.  It notes that section 6-151.1 does not state which removal date 
shall control in a situation, such as the instant one, where a fireman is removed from the payroll and awarded disability benefits, attempts a return to work with accommodation, and is later removed from the payroll a second time.  Again arguing that the plaintiff's original disability never ceased, the Board contends that his benefit award should be computed as a percentage of the salary he was earning on the date of his first removal from the fire department payroll in 1980.

We note that the Board's proposed interpretation of section 6-151.1 is inconsistent with its own finding that the date of the plaintiff's removal from the payroll was June 27, 1997.  Additionally, we find no support for the Board's interpretation in the language of the Pension Code, which must be liberally construed in favor of the applicant (
Kozak v. Retirement Board of the Fireman's Annuity & Benefit Fund of Chicago
, 95 Ill. 2d 211, 217, 447 N.E.2d 394 (1983); 
Sullivan v. Retirement Board of Firemen's Annuity & Benefit Fund of Chicago
, 267 Ill. App. 3d 965, 970-71, 642 N.E.2d 727 (1994); 
Iwanski v. Streamwood Police Pension Board
, 232 Ill. App. 3d 180, 184, 596 N.E.2d 691 (1992)).  We must give effect to the plain and unambiguous language of the statute (
Kozak
, 95 Ill. 2d at 215-16), which requires that the plaintiff's benefit be computed as a percentage of the salary he was earning when he was removed from the payroll for medical reasons on June 27, 1997.

We recognize the Board's concern that, as it attempts to return firemen currently receiving disability benefits to work with accommodations pursuant to the ADA, it may be forced to pay increased benefits to those firemen who are ultimately unable to perform assigned duties even with accommodation.  Nonetheless, we find that this is a concern which must be addressed to the legislature.  

For the foregoing reasons, the order of the circuit court is affirmed.

Affirmed.

SOUTH, P.J., and WOLFSON, J., concur.