PHYLLIS JAKUBOWSKI, Indiv. and as Mother and Next Friend of Frank Jakubowski, a Minor, Plaintiff-Appellant, v. ALDEN-BENNETT CONSTRUC-TION COMPANY *et al.*, Defendants-Appellees.

First District (6th Division)    No. 1—00—4030

Opinion filed January 11, 2002.

628

Kralovec, Jambois & Schwartz, of Chicago (Craig P. Mannarino, of counsel), for appellant.

Moore & Maisel, of Chicago (Eugena A. Whitson-Owen, of counsel), for appellee Alden-Bennett Construction Company.

Clausen Miller, P.C., of Chicago (James T. Ferrini, Mary Lisa Sullivan, and Sonia V. Odarczenko, of counsel), for appellee Drexel Horizon Limited Partnership.

PRESIDING JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiff, Phyllis Jakubowski, filed an action, on behalf of the minor plaintiff, Frank Jakubowski (Frank) against defendants, Alden-Bennett Construction Company (Alden-Bennett) and Drexel Horizon Limited Partnership (Drexel Horizon), based on common law negligence, for injuries sustained by Frank when he trespassed upon a construction site and fell through an opening in the second floor of a partially constructed building. The trial court granted summary judgment to both defendants and denied plaintiff's motion to reconsider. Plaintiff now appeals. We affirm.

## Facts

The relevant undisputed facts establish that Drexel Horizon owned property located at the 3400 block of South 55th Avenue in Cicero, Illinois. On September 30, 1996, Drexel Horizon entered into a contractual agreement with Alden-Bennett pursuant to which Alden-Bennett undertook to serve as the general contractor for the construction of the Drexel Horizon Senior Living Community (the construction project) on that property.

The relevant sections of the contract provide as follows:

"3.3 Supervision and Construction Procedures

3.3.1 The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, sequences and procedures and for coordinating all portions of the Work under the Contract, unless Contract Documents give other specific instructions concerning these matters.

* * *

3.3.5 The Contractor shall provide security of the work during non-working hours in order to protect the premises against malicious mischief and vandalism and to safeguard life and property throughout the period of the Contract.

* * *

10.1 Safety Precautions and Programs

10.1.1 The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with performance of the Contract.

* * *

10.2 Safety of Persons and Property

10.2.1 The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to:

.1 employees on the Work and other persons who may be affected thereby;

.2 the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody or control of the Contractor or the contractor's Subcontractors or Sub-subcontractors[.]
***

10.2.3 The Contractor shall erect and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners of adjacent sites and utilities.
* * *

10.2.6 The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent ***."

Construction on the project began on or about October 1, 1996. Alden-Bennett arranged with the Cicero police department to conduct routine premise checks at the construction site after working hours at night and on the weekends.

Frank lived across the street from the construction site on the corner. At his deposition, Frank testified that he went over to the construction site every day before the accident. Frank was aware that the Cicero police patrolled the construction site. Alden-Bennett's field superintendent and vice president both testified that they had seen children on the construction site before the day of the accident. The field superintendent had chased the boys off the construction site. The vice president had told the boys, including Frank, they were not allowed on the construction site. Frank's parents and even a Cicero police officer had told Frank not to go on the construction site. It is undisputed that Frank knew that he was not allowed to be on the construction site.

On the date of the accident, April 30, 1997, Frank was 13 years 11 months of age. He and his friends went over to the construction site at about 7 or 7:30 p.m. Frank's parents were at work and Frank was supposed to be watching his younger sister. Although it was dark that evening, Frank testified that he could see inside the building and could see where he was walking. Frank and his friends walked up one of the stairways to the second floor of the building. Frank had observed the workers putting in another section of the second floor that week and he wanted to check it out. Frank was walking along the second floor when he thought he saw a police car driving by the construction

site. In order to avoid being detected by the police, Frank intended to duck down. While going to duck down, Frank turned his head and stepped through a wall framing into an open stairway and fell to the first floor below, sustaining injuries.

After plaintiff filed her complaint, both defendants moved for summary judgment asserting that they did not owe a duty to Frank due to the open and obvious nature of the injury producing condition.[1] The trial court entered an order granting summary judgment and denied plaintiff's motion to reconsider.

■ In appeals from summary judgment, this court conducts a *de novo* review. *Boub v. Township of Wayne*, 183 Ill. 2d 520, 524, 720 N.E.2d 535, 537 (1998). Summary judgment is properly granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209 (1992). We may affirm summary judgment based on any grounds supported by the record. *City of Chicago v. Michigan Beach Housing Cooperative*, 297 Ill. App. 3d 317, 327, 696 N.E.2d 804, 812 (1998). The determination of the existence of a duty is a question of law to be resolved by the court. *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 583 N.E.2d 538 (1991).

■ The general rule is that a landowner or one in possession or control of premises, apart from the duty to refrain from willful or wanton misconduct, is under no duty to keep the premises in any condition to promote the safety of trespassers, whether they be minors or adults. *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 116, 660 N.E.2d 863 (1995). This general rule "evolved out of the notion that the law does not require an owner or occupier of land to anticipate the presence of persons wrongfully or unexpectedly on his land." *Corcoran v. Village of Libertyville*, 73 Ill. 2d 316, 325, 383 N.E.2d 177, 179 (1978); see also *Mt. Zion State Bank & Trust*, 169 Ill. 2d at 122, 660 N.E.2d at 871 (explaining that "[I]n a civilization based on private ownership, it is considered a socially desirable policy to permit a person use of his land in his own way, without the burden of watching for and protecting those who come there without permission or right").

■ Plaintiff contends that the issue of whether defendants owed a duty to Frank in this case is controlled by the doctrine established by our supreme court in *Kahn v. James Burton Co.*, 5 Ill. 2d 614, 126 N.E.2d 836 (1955) (the *Kahn* doctrine). The *Kahn* doctrine sets forth

---

[1]Drexel Horizon additionally argued that it was not liable because Alden-Bennet was exclusively responsible for safety matters.

the standard for determining the liability of owners and those who are in possession or control of land to children injured on their premises. *Calhoun v. Belt Ry. Co. of Chicago*, 314 Ill. App. 3d 513, 518, 731 N.E.2d 332, 336 (2000). In *Kahn*, the court recognized a narrow exception to the general rule where:

> "the owner or person in possession knows, or should know, that young children habitually frequent the vicinity of a defective structure or dangerous agency existing on the land, which is likely to cause injury to them because they, by reason of their immaturity, are incapable of appreciating the risk involved, and where the expense or inconvenience of remedying the condition is slight compared to the risk to the children." *Kahn*, 5 Ill. 2d at 625, 126 N.E.2d at 842.

■ Subsequent cases have echoed the dictates of *Kahn* and it is now firmly established that a duty will be imposed on landowners or others in possession or control of premises for personal injuries suffered by a child on the premises if (1) the landowner or other occupier of land knows or should have known that children frequent the premises *and* (2) if the cause of the child's injury was a dangerous condition on the premises. *Corcoran v. Village of Libertyville*, 73 Ill. 2d 316, 326, 383 N.E.2d 177, 180 (1978). A dangerous condition "is one which is likely to cause injury to the general class of children who, by reason of their immaturity, might be incapable of appreciating the risk involved." *Corcoran*, 73 Ill. 2d at 326, 383 N.E.2d at 180. There is no duty imposed on owners or occupiers of premises to remedy conditions involving obvious risks which children generally would be expected to appreciate and avoid. *Mount Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 117, 660 N.E.2d 863, 868 (1995); *Logan v. Old Enterprise Farms, Ltd.*, 139 Ill. 2d 229, 235, 564 N.E.2d 778 (1990); *Cope v. Doe*, 102 Ill. 2d 278, 286, 464 N.E.2d 1023 (1984); *Corcoran*, 73 Ill. 2d at 326, 383 N.E.2d at 180. While certainly there are latent dangers that a child would not appreciate due to his minority, a possessor of land is free to rely upon the assumption that any child old enough to be allowed at large by his parents will appreciate certain obvious dangers or at least make his own intelligent and responsible choice concerning them. *Mt. Zion State Bank & Trust*, 169 Ill. 2d at 117, 660 N.E.2d at 868, citing W. Keeton, Prosser & Keeton on Torts § 59, at 407 (5th ed. 1984). The rationale for this exception for obvious dangers is that since children, like adults, are expected to avoid dangers that are obvious, there is no reasonably foreseeable risk of harm. *Mt. Zion State Bank & Trust*, 169 Ill. 2d at 118, 660 N.E.2d at 868-69, citing *Cope*, 102 Ill. 2d 278, 464 N.E.2d 1023.

■ "There are many dangers, such as those of fire and water, or of

*falling from a height*, which under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed at large." (Emphasis added.) Restatement (Second) of Torts § 339, Comment *j*, at 203 (1965), cited with approval in *Corcoran*, 73 Ill. 2d at 327, 383 N.E.2d at 180, and *Cope*, 102 Ill. 2d at 286-87, 464 N.E.2d at 1027. A number of Illinois cases, including the Illinois Supreme Court cases of *Logan v. Old Enterprise Farms, Ltd.*, 139 Ill. 2d 229, 564 N.E.2d 778 (1990), and *Corcoran v. Village of Libertyville*, 73 Ill. 2d 316, 326, 383 N.E.2d 177, 180 (1978), have recognized that children are able to appreciate and avoid the risk of falling. Plaintiff contends, however, that the instant case is distinguishable from such cases in that it is not the typical generic fall-from-a-height case. Plaintiff argues instead that this case is similar to *Novak v. C.M.S. Builders & Developers*, 83 Ill. App. 3d 761, 763-64, 404 N.E.2d 918, 921 (1980), in which the court concluded that a condition, although not in and of itself dangerous, may become dangerous when combined with other nondangerous instrumentalities or surroundings.

In *Novak*, a 10-year-old boy was injured when he fell off a mound of dirt at a construction site. The excavation at the construction site created mounds of dirt that were readily visible to children and the trial court dismissed the plaintiff's action. The appellate court reversed, reasoning that the combination of the excavation, mounds of dirt and concrete foundation, which plaintiff had alleged had the propensity to cause slipping, sliding *and* falling, suggested a "complex synergistic relationship" of the three instrumentalities which interacted to cause plaintiff's forceful slipping, sliding or falling into the bottom of the excavation so as to impose upon the defendant the duty to foresee their danger to children. 83 Ill. App. 3d at 764, 404 N.E.2d at 921. The court additionally stated that such circumstances may be proved sufficiently obscure so as to be more unusually dangerous than those encountered in children's daily lives.

Plaintiff's reliance on *Novak* is misplaced. Here, there was no "complex synergistic relationship" of instrumentalities to create a risk other than the obvious risk of falling. There was no condition that caused Frank to slip and fall into the stairway. There was no condition that caused the stairway to be indiscernible. If anything, the location of the stairway in a partially constructed building on a construction site could only have made the risk of falling more, not less, obvious to Frank.

In *Logan v. Old Enterprise Farms, Ltd.*, 139 Ill. 2d 229, 564 N.E.2d 778 (1990), a 15-year-old plaintiff fell from a tree that he had climbed in order to loosen a rope swing from a branch in which it had become

entangled. The plaintiff contended that his case involved more than just a simple risk of falling from a tree because the combination of the tree, the rope swing, and a nearby ladder interacted to create a dangerous condition. Our supreme court disagreed and noted that plaintiff had failed to show that the components interacted to create a *latent* dangerous condition. *Logan*, 139 Ill. 2d at 235, 564 N.E.2d at 781. The court stated that the fact that the instrumentalities existed together was not proof that they created a dangerous condition. *Logan*, 139 Ill. 2d at 235, 564 N.E.2d at 781. In concluding that the defendant did not owe the plaintiff a duty, the court explained that "the risk of falling out of the tree was an obvious danger which plaintiff was reasonably expected to understand and appreciate." *Logan*, 139 Ill. 2d at 241, 564 N.E.2d at 784.

■ In cases where a plaintiff contends that a nondangerous condition is combined with other nondangerous surroundings so as to create a dangerous condition, the "burden is on the plaintiff to allege facts which demonstrate that the combination of surroundings creates a risk greater than those to which children are exposed in their everyday lives." *Old Second National Bank of Aurora v. Aurora Township*, 156 Ill. App. 3d 62, 69, 509 N.E.2d 692 (1987). Plaintiff has failed to meet this burden.

In a somewhat related argument, plaintiff has contended that the issue of whether the purported injury-causing hazard was open and obvious presents a question of fact that precludes summary judgment. Plaintiff argues that because the issue of whether a particular injury-causing hazard may present an obvious danger under one set of factual circumstances, but cease to be an obvious danger under another set of factual circumstances, the issue ultimately becomes a question of fact. This argument must fail. Whether a defendant owes a plaintiff a duty of care is a question of law to be determined by the court. *Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430, 437-38, 566 N.E.2d 239, 243 (1990); *Ward v. K mart Corp.*, 136 Ill. 2d 132, 140, 554 N.E.2d 22 (1990). The Illinois Supreme Court affirmed the continued viability of the open and obvious doctrine in the analysis of a landowner's *duty* to persons injured while on the landowner's property. *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 446-47, 665 N.E.2d 826, 832 (1996). The *Bucheleres* court decided the case on summary judgment where, as here, the material facts are undisputed and the alleged circumstances were not sufficient to create a dangerous condition as a matter of law.

■ In a seminal case cited by plaintiff, *Ward v. K mart Corp.*, 136 Ill. 2d 132, 554 N.E.2d 223 (1990), the Illinois Supreme Court determined that the question of the obviousness of the particular

danger presented in that case was one for the jury to decide and should not be decided as a matter of law. In *Ward*, a customer entering the store encountered a five-foot-high concrete post near the store's door, but while carrying a large mirror that blocked his view when he exited the store, he collided with the post. *Ward*, 136 Ill. 2d at 136-38, 554 N.E.2d at 224-25. As the *Ward* court explained, "[t]he inquiry is whether the defendant should reasonably anticipate injury to those entrants on his premises *who are generally exercising reasonable care for their own safety,* but who may reasonably be expected to be *distracted* *** or forgetful of the [obvious] condition after having momentarily encountered it." (Emphasis added.) *Ward*, 136 Ill. 2d at 152, 554 N.E.2d at 232. *Ward* does not require that a jury pass on the question of obviousness in every case. See, *e.g., Englund v. Englund,* 246 Ill. App. 3d 468, 477, 615 N.E.2d 861, 867 (1993) (deciding that homeowners' pool presented such a blatantly apparent danger of drowning that it could be deemed obvious as a matter of law.) As the *Ward* court stated:

> "Certainly a condition may be so blatantly obvious and in such position on the defendant's premises that he could not reasonably be expected to anticipate that people will fail to protect themselves from any danger posed by the condition. Even in the case of children on the premises, this court has held that the owner or possessor has no duty to remedy conditions presenting obvious risks which children would generally be expected to appreciate and avoid." *Ward*, 136 Ill. 2d at 148, 554 N.E.2d at 230, citing *Cope v. Doe,* 102 Ill. 2d 278, 286, 464 N.E.2d 1023 (1984) (a case involving an ice-covered retention pond):

In the present case, the open stairwell presented an open and obvious danger of falling. Thus, neither Drexel Horizon nor Alden-Bennett had a common law duty to protect Frank from the open and obvious danger. In view of this conclusion, we need not address the issues of whether safety matters were the sole responsibility of Alden-Bennett or whether Drexel Horizon exercised any control over the property that would subject it to liability.

Plaintiff further argues, however, that even if Alden-Bennett did not owe a duty under these common law principles, Alden-Bennett contractually assumed the duty to provide security of the worksite even during nonworking hours for the protection of persons such as Frank and the duty to erect and maintain reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards.

We first note that plaintiff never alleged a contractual undertaking or voluntary undertaking theory in her complaint. In its motion for

summary judgment, in addition to the argument that the injury-causing hazard was open and obvious, defendant Drexel Horizon further argued that it did not owe any duty to Frank because defendant Alden-Bennett was "solely and completely in charge of the subject construction site pursuant to the contractual language utilized in the construction contract between Drexel Horizon and Alden-Bennett." In her response to defendants' motions for summary judgment, for the first time, plaintiff contended that, as a result of the contractual language of that construction contract, Alden-Bennett voluntarily assumed a duty by virtue of its contractual obligations to Drexel Horizon, even if a common law duty did not exist. Because plaintiff never pled this voluntary undertaking theory in her complaint and never sought leave to amend her complaint to add a voluntary undertaking theory, Alden-Bennett, citing *Burys v. First Bank of Oak Park*, 187 Ill. App. 3d 384, 543 N.E.2d 253 (1989), now argues that plaintiff has waived the voluntary undertaking theory on appeal.

In *Burys*, the plaintiff filed a three-count complaint against the defendant alleging (1) fraud; (2) anticipatory breach of a written agreement to renew two bearer notes; and (3) breach of certain fiduciary duties. *Burys*, 187 Ill. App. 3d at 385, 543 N.E.2d at 254. After obtaining a dismissal of the fraud count, the defendant moved for summary judgment on the remaining counts. *Burys*, 187 Ill. App. 3d at 385, 543 N.E.2d at 254. After hearing arguments, the trial court granted summary judgment on counts II and III. *Burys*, 187 Ill. App. 3d at 386, 543 N.E.2d at 255. On appeal, the plaintiff ultimately abandoned the claims he pled in counts II and III, but raised claims that were not pled below. *Burys*, 187 Ill. App. 3d at 386, 543 N.E.2d at 255. One of these new claims was that defendant breached a good-faith duty to notify him that it would not renew the bearer notes when they were due. *Burys*, 187 Ill. App. 3d at 387, 543 N.E.2d at 255. Although plaintiff had raised this theory before the trial court at the hearing on the defendant's motion for summary judgment, the trial court rejected the claim. *Burys*, 187 Ill. App. 3d at 387, 543 N.E.2d at 255. The appellate court, noting that the plaintiff did not seek leave to amend his complaint in order to plead this, or any other, theory, summarily decided that the theory fell within the rule prohibiting presentation of new theories on appeal. *Burys*, 187 Ill. App. 3d at 387, 543 N.E.2d at 255.

Plaintiff has not addressed *Burys*, but merely asserts that she has not waived the voluntary undertaking theory because her complaint "spells out the duty owed by Alden and the specific ways in which it breached that duty." But plaintiff's generalized allegation of a duty fails to distinguish between a common law duty and a voluntarily as-

sumed duty. The allegations in plaintiff's complaint were premised upon ordinary negligence, and as we have already explained, defendants had no duty due to the open and obvious nature of the condition. Plaintiff's argument commingles the two theories, which are distinct. We further note, however, that Alden-Bennett responded to plaintiff's voluntary undertaking theory when it was raised below. Alden-Bennett did not move to strike this portion of his response and did not raise the sufficiency of plaintiff's pleadings until now. Thus, plaintiff had no reason to believe that her allegations of negligence required modification. Had they been brought to plaintiff's attention, she would have been able to cure them.

In *Lanterman v. Edwards*, 294 Ill. App. 3d 350, 689 N.E.2d 1221 (1998), although the case involved an appeal of an award rather than a grant of summary judgment, the court concluded that defendants in that case waived their arguments, first raised on appeal, which related to the adequacy of the plaintiff's complaint because the defendants "never objected to, or raised below, any defect in the pleadings." *Lanterman*, 294 Ill. App. 3d at 352, 689 N.E.2d at 1223. The *Lanterman* court further noted that defendants, as did Alden-Bennet here, *actually defended* upon the same issues they claimed were not adequately contained in the complaint.

■ In the instant case, plaintiff clearly "raised" the issue of voluntary undertaking before the trial court, not only in her response to defendants' summary judgment motion, but also in her motion for reconsideration. Thus, because plaintiff clearly raised the voluntary undertaking theory below, Alden-Bennet's actual argument is that plaintiff's pleadings were insufficient. As *Lanterman* further explained, any defects in pleadings, either in form or substance, not objected to in the trial court are waived on appeal. *Lanterman*, 294 Ill. App. 3d at 352, 689 N.E.2d at 1223.

Moreover, this court has stated that where "facts to support a theory have been raised in argument and in affidavits or depositions before the court without objection, an appellant can raise that theory on appeal." *American Apartment Management Co. v. Phillips*, 274 Ill. App. 3d 556, 565, 653 N.E.2d 834, 840 (1995); but see *Pagano v. Occidental Chemical Corp.*, 257 Ill. App. 3d 905, 911, 629 N.E.2d 569, 574 (1994) ("If the defendant is entitled to judgment as a matter of law on the claims as pled by the plaintiff, the motion will be granted without regard to the presence of evidentiary material which might create a right of recovery against the moving defendant on some unpled claim or theory"). In any event, because waiver is a limitation upon the parties, not this court (see, *e.g.*, *Carmody v. Retirement Board of the Fireman's Annuity & Benefit Fund*, 305 Ill. App. 3d 600, 604, 712 N.E.2d 870, 873 (1999)), we choose to address the issue.

■ Whether a defendant has voluntarily undertaken a duty to a plaintiff, which might support a negligence claim, like other issues of duty, is a question of law for the court that is properly addressed in a motion for summary judgment. *Brown v. Walker Nursing Home, Inc.*, 307 Ill. App. 3d 721, 724-25, 718 N.E.2d 373, 377 (1999); *Lavazzi v. McDonald's Corp.*, 239 Ill. App. 3d 403, 409, 606 N.E.2d 845, 849 (1992).

■ Under a voluntary undertaking theory of liability, the duty of care to be imposed on a defendant is limited to the extent of the undertaking. *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 239, 665 N.E.2d 1260, 1273 (1996); *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 416-17, 583 N.E.2d 538 (1991); *Pippin v. Chicago Housing Authority*, 78 Ill. 2d 204, 209-10, 399 N.E.2d 596 (1979). Persons will not be held to duties beyond those duties required by the common law unless they have voluntarily assumed such duties. *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 199 N.E.2d 769 (1964); *Martino v. Leiva*, 133 Ill. App. 3d 1006, 1007, 479 N.E.2d 955, 956-57 (1985). In Illinois, a party to a contract may be liable in tort to a third party who otherwise has no enforceable rights under the contract under a voluntary undertaking theory of liability. The Illinois Supreme Court implicitly adopted section 324A of the Restatement (Second) of Torts in *Pippin v. Chicago Housing Authority*, 78 Ill. 2d 204, 399 N.E.2d 596 (1979), and *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 415-16, 583 N.E.2d 538, 544 (1991). Section 324A of the Restatement (Second) of Torts provides as follows:

"Liability to Third Person for Negligent Performance of Undertaking

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking." Restatement (Second) of Torts § 324A (1965).

●■ Plaintiff, however, has failed to support her voluntary undertaking theory with any argument as to which, if any, of these subsections are applicable. With respect to subsection (a), plaintiff has failed to allege or show that any failure on the part of Alden-Bennett

*increased* the risk of the harm of the open and obvious condition. As to subsection (b), even assuming *arguendo* that Alden-Bennett contractually undertook to perform any duty owed by Drexel Horizon to Frank, as we have discussed, Drexel Horizon had no duty to remedy conditions involving obvious risks that children generally would be expected to appreciate and avoid. Finally, with respect to subsection (c), plaintiff has failed to allege or show that the harm suffered by Frank was a result of any reliance on the part of Drexel Horizon or Frank upon Alden-Bennett's contractual undertaking.[2]

Moreover, in a caveat to section 324A, the American Law Institute notes that it "expresses no opinion as to whether *** the making of a contract or a gratuitous promise, without in any way entering upon performance, is a sufficient undertaking to result in liability under the rule." Restatement (Second) of Torts § 324A, at 142 (1965). Courts have made a distinction between misfeasance and nonfeasance with respect to the applicability of section 324A of the Restatement. See, *e.g., Demos v. Ferris-Shell Oil Co.*, 317 Ill. App. 3d 41, 51, 740 N.E.2d 9, 17 (2000) (stating that "[w]here a duty of care is imposed by reason of a voluntary undertaking, breach of that duty can be found only where there is misfeasance rather than nonfeasance"); *Stephen v. Swiatkowski*, 263 Ill. App. 3d 694, 704, 635 N.E.2d 997, 1005 (1994) (stating that "where a duty of care is imposed by reason of a voluntary undertaking, breach of that duty can be found only where there is misfeasance rather than nonfeasance, unless plaintiff can show that he reasonably relied on the defendant for protection").

Plaintiff's complaint not only did not raise the voluntary undertaking theory, but none of the allegations involve any misfeasance or affirmative negligent acts on the part of Alden-Bennett with respect to a voluntary undertaking. Rather, plaintiff, under an ordinary negligence theory, alleged only acts of nonfeasance, such as allowing or permitting conditions to exist unguarded or unprotected, failing to implement safety measures, failing to institute safeguards, failing to post warnings and failing to place fencing or barricades around the premises. Although such allegations could potentially constitute a breach of contract against Alden-Bennett on the part of Drexel Horizon, they cannot be a basis for tort liability to a third party, such as Frank, under a voluntary undertaking theory.

---

[2]The Illinois Supreme Court explained the rationale for subsection (c) as follows: " 'Where the reliance of the other, or of the third person, has induced him to forgo other remedies or precautions against such a risk, the harm results from the negligence as fully as if the actor had created the risk.' " *Pippin v. Chicago Housing Authority*, 78 Ill. 2d 204, 211, 399 N.E.2d 596 (1979), quoting Restatement (Second) of Torts § 324A, Comment *e* (1965).

The Illinois Supreme Court has indicated that a "narrow construction" of voluntary undertakings is "supported by public policy." *Frye v. Medicare-Glaser Corp.*, 153 Ill. 2d 26, 33-35, 605 N.E.2d 557, 560-61 (1992). Subsequent cases have consistently held that a court may take public policy considerations into account when determining if a duty has been voluntarily undertaken. *Kasin v. Osco Drug, Inc.*, 312 Ill. App. 3d 823, 829, 728 N.E.2d 77, 81 (2000); *Brown v. Walker Nursing Home, Inc.*, 307 Ill. App. 3d 721, 726, 718 N.E.2d 373, 377 (1999); *Nowak v. Coghill*, 296 Ill. App. 3d 886, 894, 695 N.E.2d 532, 538 (1998); *Mroz v. Waste Management of Illinois, Inc.*, 286 Ill. App. 3d 544, 548, 676 N.E.2d 335, 337 (1997); *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 240, 665 N.E.2d 1260, 1273 (1996). By contractually undertaking to initiate, maintain and supervise all safety precautions and programs in connection with the performance of the construction contract it had with the landowner, Drexel Horizon, Alden-Bennett did not assume a duty greater than that of the common law duty generally imposed upon landowners or others in control or possession of the property. To so hold might inhibit parties who enter into construction contracts from clearly spelling out their responsibilities in contracts. Plaintiff has failed to establish that Alden-Bennett contractually or voluntarily undertook any duty to protect trespassing children from open and obvious dangers. Plaintiff has not shown how any failure to perform any contractual undertaking increased the risk of harm to Frank from open and obvious dangers or that Frank relied on such a contractual undertaking. We conclude that Alden-Bennett owed no duty to Frank pursuant to its contractual duties and is not liable to Frank under a voluntary undertaking theory.

In accordance with the foregoing, we conclude that defendants are entitled to summary judgment as a matter of law. We affirm the trial court's decision.

Affirmed.

BUCKLEY and O'BRIEN, JJ., concur.