In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 18-2203

STANLEY HUTCHISON,

*Plaintiff-Appellant,*

*v.*

FITZGERALD EQUIPMENT COMPANY, INC.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 15-cv-06521 — **Marvin E. Aspen**, *Judge.*

_____

ARGUED DECEMBER 5, 2018 — DECIDED DECEMBER 14, 2018

_____

Before FLAUM, ROVNER, and SCUDDER, *Circuit Judges.*

FLAUM, *Circuit Judge.* A forklift backed over Stanley Hutchison's foot while it was loading product onto his tractor-trailer. Hutchison's employer, who owned the forklift, had contracted with another company to provide maintenance on the forklift. Hutchison sued that third-party servicing company, Fitzgerald Equipment Company, Inc. ("Fitzgerald"), alleging that Fitzgerald was negligent in failing to warn his employer to install a backup alarm on the forklift

and was liable in concert with his employer for failing to install such an alarm. The district court granted Fitzgerald's motion for summary judgment on the negligence claim and granted Fitzgerald's motion to dismiss the in-concert liability claim. We affirm.

## I. Background

Plaintiff-appellant Stanley Hutchison worked as a truck driver for Borkholder Corporation. On August 19, 2013, Hutchison arrived at Borkholder's facility in Metamora, Illinois with an empty tractor-trailer to pick up a load of bundled foam insulation. Another Borkholder employee, Chad Schierer, was the primary forklift driver and yard foreman at the Metamora facility and was responsible for loading and unloading deliveries with a forklift. While Schierer was loading Hutchison's trailer, he reversed the forklift and ran over Hutchison's left foot with the forklift's right rear tire. Schierer did not see Hutchison when he reversed, and Hutchison did not hear a backup alarm.

At the time of the accident, Schierer was driving a Caterpillar Model No. DP40 forklift that Borkholder owned. Pursuant to Occupational Safety and Health Administration ("OSHA") regulations, Borkholder was responsible for controlling, maintaining, and inspecting the forklift on a daily basis. Defendant-appellee Fitzgerald is a service and repair company that services forklifts. Fitzgerald and Borkholder entered into an Operational Maintenance Service Agreement (the "Agreement"), under which Fitzgerald provided preventative maintenance every ninety days to the forklift involved in the accident. The Agreement is a single page, applies only to this specific forklift, and requires Fitzgerald "to perform the

lubrication and operational maintenance inspection as described on the Operational Maintenance Report form."[1]

The parties agree that the forklift was not designed, manufactured, or shipped to its original purchaser with a backup alarm and that no regulations required the forklift to have a backup alarm as of August 19, 2013, the date of the accident. They dispute, however, whether the forklift had a backup alarm installed when it rolled over Hutchison's foot. Several Borkholder employees testified that they could not recall whether the forklift had a backup alarm that day. Schierer acknowledged that photographs of the forklift, taken the day after the accident, showed no backup alarm.

It is also undisputed that Fitzgerald serviced the forklift several times in 2013 prior to the accident. A Fitzgerald technician inspected the forklift on April 5, 2013 and performed repairs on April 22 and 25, 2013. The technician did not remember whether the forklift had a backup alarm; he did not note a malfunctioning backup alarm during his inspection, indicating that either there was no backup alarm installed or the alarm was operational. Another Fitzgerald technician repaired the forklift in July 2013, and he too did not recall whether the forklift had a backup alarm. Following the accident, Borkholder requested another company, HuppToyotalift, install a backup alarm on the forklift. On October 1, 2013, a HuppToyotalift technician installed a backup alarm on the forklift and affirmed that it did not have a backup alarm at the time he installed one.

---

[1] Neither party included the Operational Maintenance Report form in the record before the district court.

On July 27, 2015, Hutchison filed suit against Fitzgerald in the Northern District of Illinois. On May 18, 2017, Hutchison filed a first amended complaint alleging two theories of liability—in-concert liability (Count I) and negligence (Count II). After the district court granted Fitzgerald's motion to dismiss Count I without prejudice and the parties completed briefing on Fitzgerald's motion for summary judgment as to Count II, Hutchison filed a second amended complaint amending Count I, and Fitzgerald again moved to dismiss. On May 4, 2018, the district court granted Fitzgerald's motion to dismiss Hutchison's in-concert liability claim and motion for summary judgment on Hutchison's negligence claim. Hutchison appeals both rulings.

## II. Discussion

### A. Negligence Claim

We review a grant of summary judgment de novo, "construing all facts and drawing all reasonable inferences in favor of the party against whom the motion under consideration was filed." *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 673 (7th Cir. 2016). "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.* (citing Fed R. Civ. P. 56(a)). The moving party "always bears the initial responsibility" to identify the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When the moving party has carried its burden …, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must set forth specific facts demonstrating a genuine issue for trial. *Id.* at 587.

To prove a defendant's negligence under Illinois law, a plaintiff must establish "the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Buechel v. United States*, 746 F.3d 753, 763–64 (7th Cir. 2014) (citing *Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011)). Whether a duty exists is a question of law. *Thompson*, 948 N.E.2d at 45. To determine whether a duty exists, a court must "ask whether a plaintiff and a defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Vesely v. Armslist LLC*, 762 F.3d 661, 665 (7th Cir. 2014) (quoting *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1057 (Ill. 2006)). Here, Hutchison alleges that Fitzgerald had a duty either to discover and disclose an inoperative backup alarm on the Caterpillar forklift, or to recommend that Borkholder install a backup alarm on the forklift because another forklift at the Metamora facility had a backup alarm.[2]

### 1. Duty to Warn

A "duty to warn exists where there is unequal knowledge, actual or constructive [of a dangerous condition], and the defendant[,] possessed of such knowledge, knows or should know that harm might or could occur if no warning is given." *Happel v. Wal-Mart Stores, Inc.*, 766 N.E.2d 1118, 1123 (Ill. 2002) (alterations in original) (quoting *Schellenberg v. Winnetka Park*

---

[2] Hutchison's arguments appear to conflate Fitzgerald's alleged duties to Borkholder with duties to Hutchison, as a Borkholder employee.

*Dist.*, 596 N.E.2d 93, 97 (Ill. App. Ct. 1992)). Hutchison argues Fitzgerald had unequal knowledge of the risks and hazards of operating a forklift without a backup alarm, and as such, Fitzgerald had a duty to warn Borkholder of those dangers. This argument fails, however, because Hutchison does not cite any evidence in the record that Fitzgerald knew of risks that Borkholder did not. Hutchison claims that Borkholder relied on Fitzgerald to make recommendations as to repairs that should be performed on the forklift, but the parties dispute whether the forklift even had a backup alarm, let alone one that was inoperable and in need of repair.

Indeed, though Hutchison characterizes the existence of a backup alarm on the forklift as in dispute, he has not presented any evidence from which a jury could draw a reasonable inference in his favor on this point. It is undisputed that the forklift was not designed, manufactured, or shipped to its original owner with a backup alarm. After the accident, another service company installed a backup alarm and affirmed that there was no backup alarm on the forklift when that installation occurred. And pictures from the day after the accident show no backup alarm on the forklift. Although several witnesses could not recall whether the forklift had a backup alarm, their "metaphysical doubt" is insufficient to create a genuine issue of material fact. *See Matushita Elec.*, 475 U.S. at 586. To infer, based on a handful of witnesses unable to recall whether the forklift had a backup alarm, that the forklift in fact had such an alarm, is impermissible speculation.[3] *See Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir.

---

[3] In reply, Hutchison points to Schierer's testimony that there were wires on the back of the forklift and that "he could see no other reason for wires on the pillar on the driver's side other than a backup alarm." The

2014) ("[I]nferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." (quoting *Tubergen v. St. Vincent Hosp. & Health Care Ctr.*, 517 F.3d 470, 473 (7th Cir. 2008))).

As further evidence of unequal knowledge, Hutchison points to expert testimony suggesting forklift dealers have superior appreciation of the hazards involved in reversing forklifts. But another forklift at the Borkholder facility—not serviced by Fitzgerald—had a backup alarm, indicating Borkholder was well aware of the availability and use of backup alarms. Moreover, as Hutchison acknowledges, OSHA regulations did not require backup alarms on forklifts at the time of the accident and Borkholder, as the owner of the forklift, was responsible for deciding whether to install a backup alarm. The duty to warn does not encompass a duty to recommend optional safety features to an owner who already knows about them. In sum, Hutchison has not pointed to any evidence of unequal knowledge between Fitzgerald and Borkholder giving rise to a duty to warn.

### 2. *Voluntary Undertaking*

Hutchison also argues that Fitzgerald is liable under a voluntary undertaking theory of liability. "In Illinois, a party to a contract may be liable in tort to a third party who otherwise has no enforceable rights under the contract under a voluntary undertaking theory of liability." *Jakubowski v. Alden-Bennett Constr. Co.*, 763 N.E.2d 790, 799 (Ill. App. Ct. 2002). Pursuant to the Restatement (Second) of Torts § 324A, which Illinois has adopted, a party is liable for breach of a

potential purpose of the wires, too, is mere speculation and is insufficient to create a genuine issue of material fact at summary judgment.

voluntary undertaking if: (a) "a party undertakes to do something and then fails to exercise reasonable care in a way that increases a third party's risk of harm"; (b) a party "undertakes to perform a duty that a different party was obligated to perform and then negligently fulfills its duty"; or (c) "a third party relies to its detriment on the fact that a duty has been voluntarily undertaken." *LM ex rel. KM v. United States*, 344 F.3d 695, 701 (7th Cir. 2003).

Hutchison contends that Fitzgerald "voluntarily undertook [the] responsibility to advise Borkholder to install a backup alarm on its Caterpillar tractor if other forklifts at Borkholder's Metamora facility had backup alarms." In support, he cites the depositions of Patrick Boyer, a forklift technician with Fitzgerald, and Travis Cowley, general manager of Fitzgerald. Cowley testified that he recommends to customers purchasing forklifts that they have the same safety options their existing trucks have. When asked if he recommends that facilities install backup alarms on their forklifts, Boyer responded that he would not recommend installing a backup alarm unless the other forklifts at that facility had backup alarms. Hutchison points to these statements as evidence that Fitzgerald undertook a voluntary duty to advise Borkholder to install a backup alarm on the Caterpillar forklift because the other forklift at the Metamora facility had one. We disagree with this logic. Fitzgerald's employees' answers to hypothetical questions do not establish such a voluntary undertaking because Hutchison does not point to any evidence that Cowley or Boyer knew the other forklift at the Metamora facility had a backup alarm.

Even if they knew about the alarm on the other forklift, the business practice Boyer and Crowley testified to does not create any legal duty to Borkholder because "[u]nder the voluntary undertaking theory of liability, the duty of care to be imposed upon a defendant is limited to the extent of its undertaking." *Frye v. Medicare-Glaser Corp.*, 605 N.E.2d 557, 560–61 (Ill. 1992) (declining to hold that a pharmacist had a duty to warn a patient of all potential side effects of a drug merely because she chose to warn about one side effect); *see also, e.g.*, *LM*, 344 F.3d at 701 ("[A] voluntary undertaking is just that—voluntary—and as such, the scope of the duty that is assumed is limited to the extent of the undertaking."); *Castro v. Brown's Chicken & Pasta, Inc.*, 732 N.E.2d 37, 42 (Ill. App. Ct. 2000). Here, Fitzgerald's undertaking was limited to the scope of the contract—"to perform the lubrication and operational maintenance inspection[s]"; Hutchison has not pointed to any evidence establishing that Fitzgerald undertook any additional duty to Borkholder outside the scope of the Agreement.

Even if Hutchison had established a voluntary undertaking—which he has not—he has not established a breach under any of the three prongs of § 324A. Under § 324A(a), Hutchison argues that Fitzgerald negligently performed its voluntary undertaking because various witnesses thought the accident "would not have occurred" if the forklift had a backup alarm. But mere knowledge of a risk does not impose an affirmative duty. *See LM*, 344 F.3d at 701. Hutchison has not shown Fitzgerald increased the risk of harm by failing to recommend installation of a device that was not required by law nor requested by the forklift owner and a device that was already known to Borkholder.

Nor can Hutchison establish, under § 324A(b), that Fitzgerald supplanted Borkholder's duty to conduct daily inspections and maintenance on the Caterpillar forklift. To be liable under § 324A(b), the defendant "must supplant the duty it undertakes from the party that originally held the duty, not merely assist or supplement the service provided by the other." *Padilla v. Hunter Douglas Window Coverings, Inc.*, No. 09 CV 1222, 2012 WL 3265002, at *5 (N.D. Ill. Aug. 8, 2012). Here, there is no evidence in the record that Fitzgerald had the power, without Borkholder's authorization, to install the backup alarm or that Fitzgerald did more than assist or supplement Borkholder's daily control and maintenance of the forklift.

Finally, as to § 324A(c), Hutchison has not put forth evidence showing that he relied to his detriment on Fitzgerald to recommend that Borkholder install a backup alarm. In cases of nonfeasance—"omission to perform a voluntary undertaking"—as opposed to misfeasance—"negligent performance of a voluntary undertaking"—Illinois law requires a plaintiff to show that he relied on the defendant's actions. *Thornton v. M7 Aerospace LP*, 796 F.3d 757, 768 (7th Cir. 2015). Here, Hutchison asserts Fitzgerald was negligent in failing to recommend installation of a backup alarm (or, alternatively, in failing to repair an inoperable backup alarm), and therefore, his claim is one of nonfeasance. *See id.* at 762, 768–69 (construing plaintiff's theory as liability for nonfeasance where plaintiff alleged defendant-manufacturer failed to advise aircraft owner to install upgraded warning system). His claim fails because he has not established the required reliance.[4]

---

[4] Despite Hutchison's insistence to the contrary, this case is not like *Wakulich v. Mraz*, 785 N.E.2d 843 (Ill. 2003). In *Wakulich*, the defendants

In sum, Hutchison has not established Fitzgerald owed a duty to recommend installation of a backup alarm on the Caterpillar forklift. We thus affirm the district court's grant of summary judgment to Fitzgerald on the negligence claim.

## B. In-Concert Liability Claim

We review de novo a district court's grant of a motion to dismiss for failure to state a claim, accepting all well-pleaded facts in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In-concert liability is a relationship between tortfeasors in which one tortfeasor acting in concert with others "is legally responsible for the actions of the other individuals." *Woods v.*

---

coerced an underage girl into consuming alcohol to the point of unconsciousness, provided minimal care for her in their home, and prevented others from calling 911. *Id.* at 846. The court determined that plaintiff's theory was not that defendants failed to act at all (*i.e.* one of nonfeasance) but that defendants voluntarily undertook a duty of care for decedent, which they negligently performed, and affirmatively prevented others from caring for her. *Id.* at 856–57. Thus, defendants' alleged affirmative misconduct was misfeasance, which does not require proof of reliance by the injured party. *Id.* That is not the case here, as Hutchison's claims are premised upon Fitzgerald's failure to act rather than any affirmative misconduct.

*Cole*, 693 N.E.2d 333, 337 (Ill. 1998). Illinois has adopted the Restatement (Second) of Torts § 876 to determine whether individuals have acted in concert to commit a tortious act. *See id.* at 335–36. Section 876 provides that a tortfeasor is liable for harm resulting to a third person from the tortious conduct of another if he (a) "does a tortious act in concert with the other or pursuant to a common design with him"; (b) "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself"; or (c) "gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person." Restatement (Second) of Torts § 876. To be liable under § 876, the "defendant's conduct must be 'more than benign,'" and "[t]he defendant must actively participate in the tortious conduct of another." *Rogers v. Reagan*, 823 N.E.2d 1016, 1020 (Ill. App. Ct. 2005) (quoting *Sanke v. Bechina*, 576 N.E.2d 1212, 1218 (Ill. App. Ct. 1991)).

Hutchison only raises arguments under subsections (b) and (c) of § 876. He claims that Fitzgerald acted in concert with Borkholder by "allowing, directing and encouraging Borkholder and its employees to operate forklifts without a critical safety device, a backup alarm," and by "failing to recommend the installation and/or repair of the backup alarm on the Caterpillar forklift, despite other forklifts and trailers at Borkholder's Metamora facility having backup alarms." Because liability under subsections (b) and (c) is based on the defendant's "substantial assistance" in the tortious conduct, a plaintiff must demonstrate "that the defendant did not merely fail to act, but also assisted the third party." *Simmons v. Homatas*, 925 N.E.2d 1089, 1100 (Ill. 2010).

Hutchison cannot succeed on his in-concert liability claims because his allegations against Fitzgerald are premised upon Fitzgerald's inaction—*i.e.* Fitzgerald's failure to install and/or repair a backup alarm on the Caterpillar forklift. He conclusorily asserts that Borkholder committed a tort "by operating a forklift without a critical safety feature, a backup alarm" (ignoring that such an allegedly "critical" feature was not mandatory under any regulations) and argues that Fitzgerald substantially encouraged Borkholder's tortious conduct by failing to make a recommendation to install an alarm. In *Simmons*, however, the Illinois Supreme Court explained that a defendant cannot be held liable under in-concert liability for failing to act; rather, a defendant must "affirmatively assist[]" in the tortious act. 925 N.E.2d at 1100; *see also Kohn v. Laidlaw Transit, Inc.*, 808 N.E.2d 564, 575 (Ill. App. Ct. 2004) ("[I]t is not enough that a defendant assist or encourage another to engage in a tort; rather, to subject a defendant to liability, the assistance or encouragement must be substantial, not merely slight."); *Umble v. Sandy McKie & Sons, Inc.*, 690 N.E.2d 157, 159 (Ill. App. Ct. 1998) ("We do not equate failing to prevent certain conduct with actively encouraging that conduct."); *Sanke*, 576 N.E.2d at 1218 ("[S]ection 876 require[s] such affirmative conduct that one's own actions create a duty."). Hutchison has not pleaded any affirmative conduct on the part of Fitzgerald that would amount to substantial assistance under § 876(b) or (c).[5]

---

[5] Nor are there any nonconclusory allegations in the operative complaint that Fitzgerald knew Borkholder's conduct constituted a tort. *See Norman v. Brandt*, 929 N.E.2d 14, 20 (Ill. App. Ct. 2010) ("[S]ection 876(b) applies when the person did not commit an act that would be a tort, but that person gave substantial assistance or encouragement to another party

The nonconclusory factual allegations in the operative complaint do not establish a plausible inference that Fitzgerald substantially assisted Borkholder in breaching a duty to Hutchison.[6] As such, we affirm the dismissal of his in-concert liability claim.

## III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

whose actions constituted a tort *and* that person *knew* that the other person's conduct constituted a tort." (citation and internal quotation marks omitted)).

[6] Additionally, for the same reason we affirmed dismissal of the negligence claim, Hutchison cannot rely on § 876(c) because he has not established Fitzgerald's conduct "separately considered, constitutes a breach of duty." *See* Restatement (Second) of Torts § 876 cmt. e ("When one personally participates in causing a particular result in accordance with an agreement with another, he is responsible for the result of the united effort if his act, considered by itself, constitutes a breach of duty and is a substantial factor in causing the result … .").